COMMODITY FUTURES TRADING COMMISSION, Plaintiff-Appellant,

v.

BRITISH AMERICAN COMMODITY OPTIONS CORP., Defendant-Appellee.

No. 1041, Docket 77–6002.

United States Court of Appeals, Second Circuit.

Argued May 4, 1977.

Decided Aug. 3, 1977.

---

Richard E. Nathan, Acting Gen. Counsel, Commodity Futures Trading Commission, Frederick T. Spindel, Assoc. Gen. Counsel, Richard A. Graham, Sp. Counsel, and Virginia F. Crisman, Atty., Commodity Futures Trading Commission, Washington, D. C., for plaintiff-appellant.

Charles J. Hecht, New York City (Haig Costikyan, New York City, of counsel), for defendant-appellee.

Before MANSFIELD and TIMBERS, Circuit Judges and MacMAHON,* District Judge.

MacMAHON, District Judge:

Appellant, Commodity Futures Trading Commission ("the Commission"), appeals from an order of the United States District Court for the Southern District of New

---

* Of the Southern District of New York, sitting by designation.

York (Gagliardi, J.), denying a preliminary injunction in an action brought by the Commission pursuant to Section 6c of the Commodity Exchange Act, as amended ("the Act"), 7 U.S.C. § 13a–1 (Supp. V, 1975). The Commission sought to prohibit appellee, British American Commodity Options Corp. ("British American") from making use of the mails or any instrumentality of interstate commerce in connection with its business as a commodity trading advisor without being registered, in violation of 7 U.S.C. § 6m. We reverse and remand with direction to issue a preliminary injunction.

## I.

In the 1974 Amendments[1] to the Act, 7 U.S.C. § 1 et seq., Congress established the Commodity Futures Trading Commission and set up a comprehensive scheme for regulation of trading in commodity futures. Central to this statutory scheme is the requirement that persons actively involved in commodities trading shall be registered with the Commission.[2] Section 2 defines the new category of "commodity trading advisors,"[3] and § 6m unequivocally makes it "unlawful for any commodity trading advisor . . . unless registered [with the Commission] to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as such commodity trading advisor. . . ." 7 U.S.C. § 6m.

Commodity trading advisors seeking registration must furnish the Commission with information concerning their organizational and capital structure, biographical information concerning their key personnel, information about their methods of operations and provisions for handling clients' funds and accounts, compensation data and "such other information as the Commission may require to determine whether the applicant is qualified for registration." 7 U.S.C. § 6n(1).

Applications for registration as commodity trading advisors become effective if the Commission fails to act within thirty days after receipt,[4] but the Commission may "deny" or "refuse" registration on various grounds set forth in §§ 6n(6), 6n(7) and

1. Commodity Futures Trading Commission Act of 1974, Pub.L. 93–463, 88 Stat. 1389. Section citations in this opinion refer to sections as codified in Title 7 of United States Code.

2. See, e. g., 7 U.S.C. §§ 6d (futures commission merchants), 6e (floor brokers), 6k (associates of futures commission merchants), and 6m (commodity trading advisors and commodity pool operators).

3. 7 U.S.C. § 2 provides in pertinent part:
"The term 'commodity trading advisor' shall mean any person who, for compensation or profit, engages in the business of advising others, either directly or through publications or writings, as to the value of commodities or as to the advisability of trading in any commodity for future delivery on or subject to the rules of any contract market, or who for compensation or profit, and as part of a regular business, issues or promulgates analyses or reports concerning commodities; but does not include (i) any bank or trust company, (ii) any newspaper reporter, newspaper columnist, newspaper editor, lawyer, accountant, or teacher, (iii) any floor broker or futures commission merchant, (iv) the publisher of any bona fide newspaper, news magazine, or business or financial publication of general and regular

circulation including their employees, (v) any contract market, and (vi) such other persons not within the intent of this definition as the Commission may specify by rule, regulation or order: *Provided*, That the furnishing of such services by the foregoing persons is solely incidental to the conduct of their business or profession."

4. 7 U.S.C. § 6n(2) provides:
"Except as hereinafter provided, such registration shall become effective thirty days after the receipt of such application by the Commission, or within such shorter period of time as the Commission may determine." While § 6n contains no provision explicitly precluding registration pending final action on a registration application (as in § 12a(2)(C), *infra* ), nor is there in the Act any other provision authorizing the Commission to approve any sort of "interim" registration while administrative proceedings are pending. We can only conclude that § 6n(2) allows the Commission thirty days initially to evaluate an application for registration, and that if proceedings are initiated before that time to determine whether grounds exist for denying or refusing registration under either §§ 6n(7) or 12a(2), the applicant must remain unregistered pending final determination.

12a(2).[5]  While the Commission may deny or refuse registration without a hearing in certain limited situations, see §§ 6n(6) and 12a(2)(A), in most cases the Commission must conduct a hearing before denying or refusing registration, §§ 6n(7) and 12a(2)(B) and (C).  Section 12a(2)(C) further provides that "pending final determination under clause (B) or (C), *registration shall not be granted*" (emphasis added).  In the case of refusal to register under subsections (B) or (C), the applicant can appeal such refusal directly to the Court of Appeals, see §§ 12a(2)(C) and 9.

Finally, the Commission is empowered in § 13a–1 to bring an action in the district court to enjoin "any act or practice constituting a violation of the Act or any rule, regulation or order under the Act."  Section 13a–1 further provides that: "Upon a proper showing, a permanent or temporary injunction *shall be issued without bond*." (Emphasis added.)

■ The intent of the congressional design is clear;  persons engaged in the defined regulated activities within the commodities business are not to operate as such unless registered, the Commission is charged in the first instance with determining the applicant's qualifications and whether proper grounds exist for refusing registration, and the Commission is empowered to seek injunctive prohibitions against violations of any provisions of the Act, including registration provisions.  Registration is the kingpin in this statutory machinery, giving the Commission the information about participants in commodity trading

---

5. 7 U.S.C. § 6n(7) provides in pertinent part:
"*The Commission after hearing may by order* deny registration, revoke or suspend the registration of any commodity trading advisor or commodity pool operator if the Commission finds that such denial, revocation, or suspension is in the public interest and that—
(A) the operations of such person disrupt or tend to disrupt orderly marketing conditions, or cause or tend to cause sudden or unreasonable fluctuations or unwarranted changes in the prices of commodities;
(B) such commodity trading advisor or commodity pool operator, or any partner, officer, director, person performing similar function or controlling person thereof—
(i) has within ten years of the issuance of such order been convicted of any felony or misdemeanor involving the purchase or sale of any commodity or security, or arising out of any conduct or practice of such commodity trading advisor or commodity pool operator or affiliated person as a commodity trading advisor or commodity pool operator; or
(ii) at the time of the issuance of such order, is permanently or temporarily enjoined by order, judgment or decree of any court of competent jurisdiction from acting as a commodity trading advisor, commodity pool operator, futures commission merchant, or floor broker, or as an affiliated person or employee of any of the foregoing, or from engaging in or continuing any conduct or practice in connection with any such activity or in connection with the purchase or sale of commodities or securities . . .."
7 U.S.C. § 12a provides in pertinent part:
"Registration of commission merchants and brokers; fees; rules and regulations; publica- tion of harmful acts;  disapproval of bylaws, etc.
The Commission is authorized—
\* \* \* \* \* \*
(2) to refuse to register any person—
(A) if the prior registration of such person has been suspended (and the period of such suspension shall not have expired) or has been revoked;
(B) if *it is found, after opportunity for* hearing, that the applicant is unfit to engage in the business for which the application for registration is made, (i) because such applicant, or, if the applicant is a partnership, any general partner, or, if the applicant is a corporation, any officer or holder of more than 10 per centum of the stock, at any time *engaged in any practice of the character pro-* hibited by this chapter or was convicted of a felony in any State or Federal court, or was debarred by any agency of the United States from contracting with the United States, or the applicant willfully made any material false or misleading statement in his applica- tion or willfully omitted to state any material *fact in connection with the application,* or (ii) for other good cause shown;  or
(C) in the case of an applicant for registra- tion as futures commission merchant, if it is found after opportunity for hearing that the applicant has not established that he meets the minimum financial requirements under section 6f of this title: *Provided,* That pend- ing final determination under clause (B) or (C), registration shall not be granted;  *And provided further,* That the applicant may ap- peal from a refusal of registration under clause (B) or (C) in the manner provided in section 9 of this title  . . .."

which it so vitally requires to carry out its other statutory functions of monitoring and enforcing the Act.

## II.

With this statutory framework in mind, we turn now to the facts of this case. In October 1975, at least five months after the registration requirements of § 6m became effective, British American commenced operations as a dealer in options on futures contracts on commodities traded on London commodity markets. Upon learning of British American's activities, the Commission, on March 3, 1976, notified British American that in its view British American was a commodity trading advisor and was required to register with the Commission. British American disagreed, but nevertheless filed an application for registration on March 17 or 18, 1976.[6] On April 16, 1976, the Commission instituted administrative proceedings, pursuant to §§ 6n(7) and 12a(2), to determine whether grounds existed for denying registration.

■ The Commission's administrative complaint charged as grounds for denial of registration, first, that John Forma, president and sole stockholder of British American, had been twice enjoined, by consent decree, from violating the record-keeping and net capital requirements of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., and had been barred by the SEC

from certain activities in the securities industry as a result of various alleged violations of the securities laws and regulations. Second, the Commission charged that British American had been cheating, defrauding and deceiving purchasers and prospective purchasers of commodity options, through deceptive literature and oral misrepresentations concerning the risks and expected profits from trading in options and futures contracts, and concerning British American's role as principal in transactions with customers. The Commission stated both § 6n(7) and the "other good cause" provision of § 12a(2)(B)(ii) as the alleged grounds for denying registration.[7] A hearing was held before an Administrative Law Judge from November 15 to December 15, 1976, but decision has not yet been rendered.

After the administrative complaint had been filed, but before the matter had come on for hearing, British American purportedly continued to function as a commodity trading advisor, although still unregistered. Consequently, on July 22, 1976, the Commission commenced this action for a preliminary injunction, which the district court denied on October 20, 1976.

## III.

■ The district court found, for the limited purpose of the preliminary injunction motion,[8] that British American was a commodity trading advisor, 422 F.Supp. at 664–

---

**6.** It is unclear whether the application was filed on March 17 or 18, but it is immaterial since, in any event, the Commission instituted administrative proceedings within the thirty-day period provided by § 6n(2).

**7.** Section 12a originally applied only to futures commission merchants and floor brokers, but was expanded with the 1974 amendments to include commodity trading advisors and others. Section 6n, however, was entirely new with the 1974 amendments and applies only to commodity trading advisors and commodity pool operators. We see no reason to conclude that, through the enumeration in § 6n(7) of other, specific causes for denial of registration, Congress meant to exclude commodity trading advisors from the more general grounds established in § 12a(2), including the "other good cause" reason of § 12a(2)(B)(ii). Indeed, Congress' specific *inclusion* of commodity trading

advisors in § 12a, at the same time as the enactment of the new § 6n, plainly implies that Congress intended commodity trading advisors to be covered by both sections. In short, we see no essential disharmony between §§ 6n and 12a as they apply to commodity trading advisors, particularly since both sections explicitly establish the procedural requirement of a hearing for the grounds alleged in this case. Section 6n(7) requires the Commission, in addition, to find that denial of registration is "in the public interest."

**8.** In view of British American's continuing argument that it is not a commodity trading advisor, neither the district court's finding, nor our affirmance, should be construed to preclude the full exposition and resolution of this issue at the administrative level.

65. There is ample evidence in the record to support that finding. Eight witnesses testified that employees of British American had mailed brochures and pamphlets and had contacted customers on the telephone, offering opinions and advice and issuing analyses and reports concerning the value of commodities. Evidence of the literature mailed to customers was also in evidence, including British American's newsletters, "London Commodity Comments" and "Helpful Hints," as well as other mailings, all specifically touting commodity futures (and options on such futures) in rubber, coffee, sugar, cocoa, silver, etc. We note that while § 2 excludes certain persons from the definition of "commodity trading advisor" where the offering of advice is "solely incidental" to another registered or professional occupation, British American did not qualify for any of those exemptions.[9] In any event, British American's advising activities were neither "entirely gratuitous" nor mere "incidental expression of views." See S. Rep. No. 93–1131, 93d Cong., 2d Sess. 24 (1974), U. S. Code Cong. & Admin. News 1974, p. 5843. British American could only hope to profit if its customers and prospective customers acting on its regular information and advice concerning the value and market prospects of commodities and commodity options, purchased such options, for, if they did, British American charged a healthy markup of up to 55%.[10]

The district court applied the now well-established rule that in actions for a statutory injunction, such as this, the agency need not prove irreparable injury or the inadequacy of other remedies as required in private injunctive suits, but only that there is a reasonable likelihood that the wrong will be repeated. See *SEC v. Management Dynamics, Inc.,* 515 F.2d 801, 807–09 (2d Cir. 1975); *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1101 (2d Cir. 1972); *CFTC v. J. S. Love & Assoc. Options, Ltd.,* 422 F.Supp. 652, 661 (S.D.N.Y.1976).[11]

The district court, however, exercising the equitable discretion vested with the court even in statutory injunctive actions, see *Hecht Co. v. Bowles,* 321 U.S. 321, 328–30, 64 S.Ct. 587, 88 L.Ed. 754 (1944); *Management Dynamics, supra,* 515 F.2d at 808, denied the preliminary injunction. The district court felt that while the Commission had made a prima facie showing that British American was offering commodity advice while unregistered,

"the mere continuation of business after the CFTC has found 'good cause' to deny registration is not the necessary repetition of a wrong to grant the injunction. Rather, there must be some indication that a wrong connected with fraud or misconduct, herein related to the alleged activity that led up to the consent decree, is to be repeated. The CFTC introduced no evidence of any illegal behavior of John Forma either leading up to the consent decree or repeated with British

9. See note 3, *supra.*

10. We do not mean to suggest by this that options premiums alone must always constitute the necessary "compensation or profit" under the § 2 definition of commodity trading advisor. British American argues that, since it does not charge separately just for advice, it does not come within the definition. Nevertheless, as we have noted, British American does derive profit, albeit indirectly, from its advising activities, it qualifies for none of the professional exemptions in § 2 (although its subsequent application for registration as futures commission merchant is still pending), and in any event British American's advice clearly exceeds the "incidental" proviso of the exemptions in § 2.

Nor do we express any view on whether, in certain cases, persons may be required to register as both futures commission merchants and commodity trading advisors. It is clear from § 2 that futures commission merchants giving only incidental advice need not register as commodity trading advisors. Other situations outside the parameters of that exclusion, however, may provide proper cases for dual registration.

11. As the district court noted, the injunctive provision of § 13a–1 is in all material respects similar to § 21(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(e), and § 20(b) of the Securities Act of 1933, 15 U.S.C. § 77t(b), and case law developed under those sections of the securities laws is pertinent to cases under § 13a–1. See *CFTC v. J. S. Love & Assoc. Options, Ltd.,* 422 F.Supp. 652, 661 (S.D.N.Y. 1976).

American. Absent such repetition, a preliminary injunction cannot be granted under the facts of this case." 422 F.Supp. at 667.

As we see it, the material question to be answered in this case is not whether the Commission was justified in challenging British American's fitness for registration, or whether it had adequate grounds for denying registration altogether. Adjudication of those issues is clearly vested in the Commission. §§ 6n(7) and 12a(2). The material question here is simply whether the Commission made a prima facie showing that British American was violating, and likely to continue violating, the registration requirements of § 6m by using the mails or other means or instrumentalities of interstate commerce in connection with its business as a commodity trading advisor while unregistered. The record here compels an affirmative answer to that question.

A likelihood of future violations may be inferred from past unlawful conduct. In the present case, not only did British American maintain that its activities were legitimate, but it persisted in offering commodity trading advice right up to the day of the hearing in the district court. Under these circumstances, the likelihood of future violations, if not restrained, is clear. See *Management Dynamics, supra,* 515 F.2d at 807–08; *SEC v. First American Bank & Trust Co.,* 481 F.2d 673, 682 (8th Cir. 1973); *Manor Nursing Centers, supra,* 458 F.2d at 1100–01.

The district court erred in concluding that the "mere" continuation of the proscribed activities is not the necessary repetition of a wrong to warrant the injunction unless there is, in addition, proof of fraud or misconduct. Congress has specifically found that the activities of commodity trading advisors affect substantially the transactions on commodity markets, see 7 U.S.C. § 6l, and it has made the policy decision that the conduct of business by unregistered advisors is not in the public interest. Congress has also found that registration shall not be granted but upon proper application and scrutiny by the Com-

mission, and it has established procedures and grounds for denial of registration. Faced with the flat prohibition of § 6m against using the facilities of interstate commerce to give commodity advice unless registered, violations of that prohibition are "wrongs" which, if likely to be repeated, must be restrained. While fraud or misconduct may also be violations of the Act, and may constitute grounds for denial of registration, violations of § 6m alone are sufficient to require the injunction in this case. Permitting unregistered commodity trading advisors unlawfully to continue furnishing advice would not only nullify this statutory prohibition, but would also undermine and perhaps destroy the whole congressional scheme of regulation in this highly sensitive area of public trust. Refusal to enjoin such unregistered activities could only serve to encourage commodity trading advisors to operate even though not registered, and even though the Commission had asserted grounds and instituted proceedings for withholding registration.

Implicit in the district court's requirement that fraud or misconduct be proven is the notion that the Commission should have proven its grounds for denial of registration of British American. We reject this suggestion. The Commission, like the SEC in the securities area, is the "statutory guardian" entrusted with the enforcement of the congressional scheme for safeguarding the public interest in commodity futures markets. *Management Dynamics, supra,* 515 F.2d at 808. It possesses the resources and expertise essential to a full investigation, exposition, understanding and initial resolution of such technical problems as the initial evaluation of an application for registration, the need for further inquiry (possibly including a hearing), the reasons for delaying a hearing, and ultimately, the existence of grounds for granting or denying an application.

Premature consideration of these matters, vested with the Commission in the first instance, would enmesh the court in a technical thicket which it should avoid, at least until the Commission has an opportu-

nity to complete its initial investigatory and adjudicatory functions. In the meantime, we see no justification for permitting continuing violations of § 6m, particularly in view of the clear statement of § 12a(2) that interim registration shall not be granted.

■ While there may be situations where the Commission's assertion of grounds for denial is so untenable as to warrant denial of an injunction, this is not such a case. The consent decrees against Forma at least arguably fall within the express language of § 6n(7)(B)(ii), which authorizes the Commission to deny commodity trading advisor registration when an officer or controlling person "is . . . enjoined by order, judgment or decree . . . from engaging in or continuing *any* conduct or practice in connection with . . . the purchase or sale of commodities or securities . . ." (Emphasis added.)[12]

The Commission, furthermore, has alleged fraud and misleading statements by British American in connection with its *current* activities as a commodity trading advisor. The purpose of the hearing before the Commission is to investigate and adjudicate the issues of fact giving rise to these allegations. While the Commission did prematurely raise these issues in the district court, their resolution was, nevertheless, unnecessary if not wholly immaterial to the question of whether British American had already violated and would probably continue violating the registration provisions of the Act.

It is perhaps regrettable that Congress did not impose specific time limitations on the Commission's administrative proceedings,[13] and equally regrettable that the Commission has failed to act with more dispatch in this case, but we see no justification for federal courts to remedy this unfortunate situation, pending administra-

tive adjudication, by permitting the continuance of activities so clearly proscribed by § 6m.

■ Moreover, the district court gave undue weight to the private business interest of British American in continuing its unlawful activities as a commodity trading advisor. Where the Commission is seeking to vindicate the public interest, the need to enforce the commodity trading laws must be given "special emphasis in the district court's calculus." *Management Dynamics, supra,* 515 F.2d at 809 n.5. The "statutory imprimatur" given to enforcement proceedings is sufficient to obviate the need for a finding of irreparable injury; a finding that future violations are likely to occur implies that a significant injury to the public has been shown. *Id.* at 808–09. Furthermore, "the public interest, when in conflict with private interest, is paramount." *SEC v. Culpepper,* 270 F.2d 241, 250 (2d Cir. 1959). Finally, to the extent that British American's business activities have succeeded through the unlawful furnishing of advice while not registered, British American has been acting at its own peril. A court of equity is under no duty "to protect illegitimate profits or advance business which is conducted [illegally]." *FTC v. Thomsen-King & Co.,* 109 F.2d 516, 519 (7th Cir. 1940).

The injunction here at issue would restrain only the use of facilities of interstate commerce in furnishing commodity trading advice, and to the extent that British American has succeeded and can continue to function through other facilities, the injunction would have no effect. We see no merit in the principle that the most successful illegal operations, which by their very size and number of customers exert a greater influence on the commodities markets, should be insulated from the registration requirements of the Act. While there is

---

12. We express no opinion on the Commission's view, expressed in its July 1975 release, "Standards for Denial of Registration," 40 Fed.Reg. 28125–26, that a consent decree enjoining any conduct or practice in the securities field also constitutes "good cause" for refusal of registration under § 12a(2)(B)(ii).

13. See, for example, § 15 of the Securities Exchange Act of 1934, 15 U.S.C. § 78*o,* requiring that registration hearings for brokers and dealers must be held within 120 days of application, extendable up to 90 additional days for good cause. 15 U.S.C. § 78*o* (b)(1)(B).

always some measure of equitable discretion even in statutory injunctive actions, *Hecht, supra; Management Dynamics, supra,* we see no room for the exercise of that discretion in this case.

We do not hold here that the district court must become a rubber stamp and issue an injunction whenever the Commission applies for one. We hold simply that once the Commission has made a prima facie showing that violations of the registration provisions of the Act have occurred and are likely of repetition and that the Commission has a tenable basis for commencing administrative proceedings to inquire into an applicant's fitness, an injunction must issue.

We share the district court's concern and unfavorable view of the Commission's delay at the administrative level, and appreciate the difficulties confronting it in undertaking to resolve the elusive and irrelevant issues raised at the hearing. Nevertheless, we feel that the Commission, albeit confusingly, made out a "proper showing" for relief under § 13a–1, and the injunction should, therefore, have been issued.

Accordingly, we reverse and remand with direction to issue a preliminary injunction consistent with this opinion.