**COMMODITY FUTURES TRADING COMMISSION, Plaintiff,**

v.

**The AMERICAN BOARD OF TRADE, INC., Arthur N. Economou, Phyllis H. Economou, the American Board of Trade Clearing Corporation, Inc., the American Board of Trade Service Corporation, Inc., and Arthur N. Economou and Company, Inc., Defendants.**

**79 Civ. 2134 (VLB).**

United States District Court, S. D. New York.

July 13, 1979.

Thomas Goodbody, Jane F. Henley, Commodity Futures Trading Commission, Washington, D. C., for plaintiff.

Lewis M. Steele, Eisner, Levy, Steele & Bellman, New York City, for defendants.

Arthur N. Economou, pro se.

MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

I. *Introduction*

Plaintiff, the Commodity Futures Trading Commission ("the Commission"), seeks various forms of relief based on defendants' alleged violations of Sections 4c(b) and 4c(c) of the Commodity Exchange Act, as amended ("the Act"),[1] and Sections 32.7 and 32.11

---

1.  7 U.S.C. § 6c(b) and (c). To facilitate reference, the citations from the United States Code (*e. g.,* 7 U.S.C. § 6c(b)) will generally be used in the text herein.

of the regulations promulgated under the Act.[2] The case is now before me on the Commission's motion for a preliminary injunction.

## II. Conclusion

For the reasons that follow, I grant the Commission's motion.[3] Defendants are preliminarily enjoined (a) from accepting money, securities, or property (or extending credit in lieu thereof) from any person in connection with the purchase or sale of any commodity option; (b) from soliciting and accepting orders for the purchase or sale of commodity options and from supervising persons so engaged, and (c) from refusing to produce for inspection by authorized representatives of the Commission records that Commission regulations require be kept. Defendants may continue to service accounts of existing customers in connection with commodity option transactions that were entered into prior to April 24, 1979.[4]

## III. Discussion

The Commission is a duly constituted independent regulatory agency of the United States. Since April 21, 1975, the Commission has been charged with the responsibility for administering and enforcing the provisions of the Act and the regulations promulgated under the Act, including those provisions and regulations that pertain to commodity options.[5]

Defendant the American Board of Trade, Inc. ("the Board"), a Delaware corporation with its principal place of business in New York City, is a membership organization that provides, inter alia, an exchange and marketplace for certain commodity options transactions. The other defendants are corporations affiliated with the Board and Arthur N. and Phyllis H. Economou, individuals who are officers of the Board and its corporate affiliates. None of the defendants is presently registered with the Commission in any capacity.[6]

### A. Violations of 7 U.S.C. § 6c(b) and Regulation 32.11, and of 7 U.S.C. § 6c(c)

The complaint alleges that defendants, by engaging in commodity option transactions,

**2.** 17 C.F.R. §§ 32.7 and 32.11 and 43 Fed.Reg. 16161 (1978).

**3.** The preliminary injunction issued herein is issued pursuant to Section 6c of the Commodity Exchange Act, 7 U.S.C. § 13a-1, which is the jurisdictional basis for this action. 7 U.S.C. § 13a-1 provides, in part, that "[u]pon a proper showing, a . . . temporary injunction . . . shall be granted without bond." The Commission's position in this case is sufficiently well supported to constitute the required "proper showing." Accordingly, I do not require the Commission to post a bond.

The preliminary injunction is based on all the papers submitted in support of, and in opposition to, plaintiff's application, and on oral argument, which was had on April 24, 1979 and May 1, 1979. See Kelley v. Carr, 442 F.Supp. 346, 359 (W.D.Mich.1977) ("[I]n some cases no evidentiary hearing at all is required, and . . . a preliminary injunction may be granted on the basis of affidavits alone.") (dictum).

**4.** The first hearing on this matter was held on April 24, 1979. By that date at the latest, defendants were certainly aware of the dimensions of the relief sought herein by the Commission.

**5.** For a discussion of the definition of "commodity option," see British American Commodity Options Corp. v. Bagley, 552 F.2d 482, 484–85 (2d Cir.), cert. denied, 434 U.S. 938, 98 S.Ct. 427, 54 L.Ed.2d 297 (1977); Commodity Futures Trading Comm'n v. U. S. Metals Depository Co., 468 F.Supp. 1149, 1154–55 (S.D.N.Y. 1979).

**6.** Defendants the American Board of Trade Clearing Corp. ("Clearing Corp."), the American Board of Trade Service Corp., and Arthur N. Economou and Company, Inc., all Delaware corporations with their principal places of business in New York City, are operational affiliates of the Board. Clearing Corp. was registered with the Commission as a futures commission merchant in 1975 and 1976. The Board and the other corporate defendants have never been registered with the Commission.

Defendant Arthur N. Economou is president of the Board and holds various corporate positions in the three above-mentioned operational affiliates of the Board. Defendant Phyllis H. Economou also holds various corporate positions in the Board and its operational affiliates. Both were registered with the Commission as floor brokers in 1975 and 1976.

violate 7 U.S.C. § 6c(b) and Regulation 32.-11, and 7 U.S.C. § 6c(c).

7 U.S.C. § 6c(a), which is referred to in 7 U.S.C. § 6c(b), provides in pertinent part:

Prohibited transactions—Commodities specifically listed

(a) It shall be unlawful for any person to offer to enter into, enter into, or confirm the execution of, any transaction involving any commodity, which is or may be used for (1) hedging any transaction in interstate commerce in such commodity or the products or byproducts thereof, or (2) determining the price basis of any such transaction in interstate commerce in such commodity, or (3) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof—

\*    \*    \*    \*    \*    \*

(B) if such transaction involves any commodity specifically set forth in section 2 of this title, prior to the enactment of the Commodity Futures Trading Commission Act of 1974, and if such transaction is of the character of,

7. The complete text of 7 U.S.C. § 6c(a) reads:
§ 6c. Prohibited transactions—Commodities specifically listed
(a) It shall be unlawful for any person to offer to enter into, enter into, or confirm the execution of, any transaction involving any commodity, which is or may be used for (1) hedging any transaction in interstate commerce in such commodity or the products or byproducts thereof, or (2) determining the price basis of any such transaction in interstate commerce in such commodity, or (3) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof—
(A) if such transaction is, is of the character of, or is commonly known to the trade as, a "wash sale," "cross trade," or "accommodation trade," or is a fictitious sale;
(B) if such transaction involves any commodity specifically set forth in section 2 of this title, prior to the enactment of the Commodity Futures Trading Commission Act of 1974, and if such transaction is of the character of, or is commonly known to the trade as, an "option", "privilege", "indemnity", "bid", "offer", "put", "call" "advance guaranty", or "decline guaranty", or
(C) if such transaction is used to cause any price to be reported, registered, or recorded which is not a true and bona fide price.

or is commonly known to the trade as, an "option", . . . [7]

Thus 7 U.S.C. § 6c(a) flatly prohibits option transactions with respect to certain designated commodities,[8] not including those commodities to which defendants' options pertain.

7 U.S.C. § 6c(b) provides in pertinent part:

Commodities regulated but not specifically listed

(b) No person shall offer to enter into, enter into, or confirm the execution of, any transaction subject to the provisions of subsection (a) of this section involving any commodity regulated under this chapter, but not specifically set forth in section 2 of this title, prior to the enactment of the Commodity Futures Trading Commission Act of 1974, which is of the character of, or is commonly known to the trade as, an "option", . . . ., contrary to any rule, regulation, or order of the Commission prohibiting any such transaction . . . .[9]

Nothing in this section shall be construed to prevent the exchange of futures in connection with cash commodity transactions or of futures for cash commodities, or of transfer trades or office trades if made in accordance with board of trade rules applying to such transactions and such rules shall have been approved by the Commission.

8. Option transactions are prohibited in the following agricultural commodities, all of which were specifically set forth as commodities in 7 U.S.C. § 2 (1970) prior to the enactment of the Commodity Futures Trading Commission Act of 1974: wheat, cotton, rice, corn, oats, barley, rye, flaxseed, grain sorghums, mill feeds, butter, eggs, onions, Solanum tuberosum (Irish potatoes), wool, wool tops, fats and oils (including lard, tallow, cottonseed oil, peanut oil, soybean oil and all other fats and oils), cottonseed meal, cottonseed, peanuts, soybeans, soybean meal, livestock, livestock products, and frozen concentrated orange juice.

9. The complete text of 7 U.S.C. § 6c(b) reads:
Commodities regulated but not specifically listed
(b) No person shall offer to enter into, enter into, or confirm the execution of, any transaction subject to the provisions of subsection (a) of this section involving any com-

Thus 7 U.S.C. § 6c(b) authorizes the Commission to promulgate regulations prohibiting options with respect to all commodities regulated under the Act other than those to which 7 U.S.C. § 6c(a) pertains.

Under the Act the word "commodity" is defined to mean not only certain enumerated goods and articles such as "wheat, cotton," etc., but also "all other goods and articles, except onions . . . ," and "all services, rights, and interests in which contracts for future delivery are presently or in the future dealt in." [10] The options dealt in on the Board pertain to silver bullion, silver coins, gold bullion, platinum, copper, and plywood, and to foreign currencies such as the Swiss franc and the German mark, all of which are commodities encompassed within the statutory definition.[11]

Regulation 32.11, promulgated by the Commission pursuant to 7 U.S.C. § 6c(b), prohibits the purchase and sale of most commodity options in the United States. It provides in pertinent part:

Notwithstanding any other provision of this Part 32, it shall be unlawful on and after June 1, 1978, until further rule,

regulation or order of the Commission, for any person to solicit or accept orders for, or to accept money, securities or property in connection with, the purchase or sale of any commodity option, or to supervise any person or persons so engaged.

7 U.S.C. § 6c(c), which was enacted as a part of the "Futures Trading Act of 1978," [12] confirmed the prohibition that had been effected by Regulation 32.11. 7 U.S.C. § 6c(c) reads in pertinent part:

Commodity option transaction; conditions ending prohibition; excepted persons

(c) Notwithstanding the provisions of subsection (b) of this section, no person may, after the enactment of the Futures Trading Act of 1978, offer to enter into, enter into, or confirm the execution of any commodity option transaction involving any commodity regulated under this chapter but not specifically set forth in section 2 of this title prior to the enactment of the Commodity Futures Trading Commission Act of 1974 . . . .[13]

---

modity regulated under this chapter, but not specifically set forth in section 2 of this title, prior to the enactment of the Commodity Futures Trading Commission Act of 1974, which is of the character of, or is commonly known to the trade as, an "option", "privilege", "indemnity", "bid", "offer", "put", "call", "advance guaranty", or "decline guaranty", contrary to any rule, regulation, or order of the Commission prohibiting any such transaction or allowing any such transaction under such terms and conditions as the Commission shall prescribe within one year after the effective date of the Commodity Futures Trading Commission Act of 1974 unless the Commission determines and notifies the Senate Committee on Agriculture, Nutrition, and Forestry and the House Committee on Agriculture that it is unable to prescribe such terms and conditions within such period of time: *Provided,* That any such order, rule, or regulation may be made only after notice and opportunity for hearing: *And provided further,* That the Commission may set different terms and conditions for different markets.

10. 7 U.S.C. § 2.

11. Pursuant to Rule 201, Fed.R.Evid., I take judicial notice of the following: contracts for future delivery are dealt in with respect to

silver bullion on the New York Commodity Exchange and the Chicago Board of Trade; with respect to silver coins on the New York Mercantile Exchange; with respect to gold bullion on the New York Commodity Exchange and on the International Monetary Market of the Chicago Mercantile Exchange; with respect to platinum on the New York Mercantile Exchange; with respect to copper on the New York Commodity Exchange; with respect to plywood on the Chicago Board of Trade; and with respect to foreign currencies on the International Monetary Market of the Chicago Mercantile Exchange. *See* Wall Street Journal, July 12, 1979, at 30.

12. Pub.L.No. 95–405, 92 Stat. 865.

13. The complete text of 7 U.S.C. § 6c(c) reads:

Commodity option transaction; conditions ending prohibition; excepted persons

(c) Notwithstanding the provisions of subsection (b) of this section, no person may, after the enactment of the Futures Trading Act of 1978, offer to enter into, enter into, or confirm the execution of any commodity option transaction involving any commodity regulated under this chapter but not specifically set forth in section 2 of this title prior to the enactment of the Commodity Futures

■ Defendants concede that they engage in commodity option transactions; that they are not registered with the Commission; and that they have not applied for an exemption from the Act's prohibition of options transactions. They take the position that, on two bases, some or all of the transactions in which they engage are not within the scope of the statutory and regulatory prohibition. They argue that the Act does not apply to options unless those options pertain to commodity futures contracts; and they also argue that the Act does not apply to options pertaining to foreign currency.

Both contentions by defendants are grounded in certain language contained in Section 2(a) of the Act, 7 U.S.C. § 2, an analysis of portions of which becomes necessary.

7 U.S.C. § 2 is entitled "Definitions".

It defines "contract of sale" to include "sales, agreements of sale, and agreements to sell."

It defines "commodity" as meaning various specified products such as wheat, cotton, rice, livestock products, frozen concentrated orange juice "and all other goods and articles, except onions . . . , and all services, rights and interests in which contracts for future delivery are presently or in the future dealt in: . . ."

It provides exclusive jurisdiction to the Commission with respect to accounts, agreements and transactions involving contracts of sale of a commodity for future delivery, including, under "agreements," "any transaction which is of the character of, or is commonly known to the trade as, an 'option.' "

Chapter 1 of U.S.C. Title 7, which includes 7 U.S.C. § 2, pertains to "Commodity Exchanges." 7 U.S.C. § 2 also provides that nothing in Chapter 1 "shall be deemed to govern or in any way be applicable to transactions in foreign currency, . . ., unless such transactions involve the sale thereof for future delivery conducted on a board of trade."

Defendant Arthur N. Economou apparently relies on certain of this language in 7 U.S.C. § 2 as support for his contention that the Act pertains only to options and other transactions involving commodity futures. He notes that defendants' options transactions are based on spot and cash markets and are not options transactions based on commodity *futures* contracts, and he urges the conclusion that defendants' options transactions are outside the scope of the Act.

This argument apparently stems from a misapprehension of the definition of "commodity" in 7 U.S.C. § 2. That definition is broad indeed—in addition to specified products it includes "all other goods and articles" and "all services, rights and interests in which contracts for future delivery are presently or in the future dealt in: . ." The reference to futures contracts in the statutory definition of "commodity" is descriptive and not limiting. The definition of "commodity" contained in 7 U.S.C. § 2 is applicable for purposes of 7 U.S.C. § 6c, and there is nothing in either 7 U.S.C. § 2 or 7

Trading Commission Act of 1974, until (1) the Commission transmits to the House Committee on Agriculture and the Senate Committee on Agriculture, Nutrition, and Forestry documentation of its ability to regulate successfully such transactions, including a copy of the Commission's proposed rules and regulations, and (2) the expiration of thirty calendar days of continuous session of Congress after the date of such transmittal. The Commission is not precluded from transmitting, at any time, documentation relating to its ability to regulate such transactions regarding individual commodities, classes of commodities, or regulation of such transactions on specific boards of trade. Nothing in this subsection shall affect any rights or obligations arising out of any transactions subject to the provisions of this subsection entered into, or the execution of which was confirmed, prior to October 1, 1978: *Provided,* That this prohibition shall not apply to any transaction expressly *permitted* under rules or regulations prescribed by the Commission, before or after September 30, 1978, to be offered to be entered into, entered into, or confirmed, in which the purchaser is a producer, processor, commercial user of, or a merchant handling, the commodity involved in the transaction, or the products or byproducts thereof.

U.S.C. § 6c that limits the applicability of any part of 7 U.S.C. § 6c to options that pertain to contracts of sale of a commodity for future delivery. Every one of the options bought and sold on the Board pertains to a commodity with respect to which contracts for future delivery are traded on a contract market. *See* p. 1180, *supra,* and n. 11. Although the grant of exclusive jurisdiction to the Commission in 7 U.S.C. § 2, with respect to transactions of the character of options, is in terms of options involving futures contracts, nothing in 7 U.S.C. § 2 limits the broad sweep of the statutory prohibitions contained in 7 U.S.C. § 6c. The proscriptions in 7 U.S.C. § 6c(b) and § 6c(c) pertain to commodity option transactions "involving any commodity"; the proscriptions are not confined to options involving commodity futures. Defendant Economou's argument is rejected.[14]

Defendants the Board and its operational affiliates maintain that at least some of their options transactions—those that pertain to foreign currency—are outside the scope of the prohibitions of the Act and Regulation 32.11. These defendants base this argument on the proviso in 7 U.S.C. § 2 that "[n]othing in this chapter shall be deemed to govern or in any way be applicable to transactions in foreign currency . . . . ."

A transaction in foreign currency and a transaction in options involving foreign currency are different animals. A transaction in foreign currency may involve a spot market exchange in which cash is exchanged for the foreign currency, or it may involve a contract of sale of the foreign currency for future delivery. The spot market transaction would not be governed by the Commodity Exchange Act because of the proviso of Section 2 to the effect that nothing in the Act "shall be deemed to govern or in any way be applicable to transactions in

foreign currency." The futures contract in foreign currency would be governed by the Act because such a contract falls within a clearly stated exception to the proviso: the Act is inapplicable to transactions in foreign currency "unless such transactions involve the sale thereof for future delivery conducted on a board of trade." 7 U.S.C. § 2.

While the Act is not applicable to transactions *in* foreign currency, foreign currency is a commodity as defined in Section 2, and transactions *involving* that commodity that do not constitute an exempted transaction *in* that commodity are subject to regulation under the Act.

An option to purchase or sell a commodity is not a transaction *in* that commodity. It is a transaction that *involves* the commodity. If one makes a contract to buy a specified amount of Swiss francs, one engages in a transaction *in* that currency within the meaning of the statutory proviso: when one pays the purchase price all that remains is for the foreign currency to be delivered. A contract to buy a specified amount of Swiss francs for future delivery is also a transaction *in* that currency: when one pays the purchase price all that remains is for the currency to be delivered (unless, as in the usual case, the purchaser liquidates his position prior to delivery).

When one purchases an option to buy or sell Swiss francs, one receives for one's money not Swiss francs, now or in the future, but the right to buy or sell Swiss francs for a specific price at a specified date in the future. This is simply a transaction in an option *involving* Swiss francs. The transaction anticipates a second transaction—the exercise of the option—which may or may not take place and which would be a transaction *in* Swiss francs. In a purchaser or sale of an option, the transaction is completed when payment is made, and

---

**14.** Defendant Economou also argues that the Act and Regulation 32.11 would violate the antitrust laws if they were interpreted to proscribe options transactions based on spot and cash, as opposed to commodity futures, market. *See* 7 U.S.C. § 19 ("The Commission shall take into consideration the public interest to be protected by the antitrust laws and endeavor to take the least anticompetitive means of achieving the objectives of this chapter.") This antitrust argument has been made elsewhere and properly rejected. *Rosenthal v. Bagley,* 450 F.Supp. 1120, 1124–25 (N.D.Ill.1978).

the purchaser must take further steps at the exercise date—and pay more money—if there is to be a discrete transaction *in* the commodity involved.

An option involving any commodity is, therefore, a transaction in which one purchases or, in the case of the grantor, sells the right to enter into a transaction *in* that commodity—the right to purchase it or to sell it, at a specified date and at a fixed price. The option transaction is a long step removed from a transaction *in* the commodity involved, since the option purchaser, if he or she does nothing more when the specified date arrives, will simply see the option die. If, when the exercise date arrives, the option holder decides to exercise the option, he or she at that point, and *not before,* will engage in a transaction *in* the commodity involved.

In short, the Commodity Futures Trading Commission, despite its name, is authorized by the Act to regulate more than transactions in commodity futures. The Commission is also authorized by the Act to regulate transactions in actual commodities and, most relevant here, transactions in commodity options. "[T]ransactions *in* foreign currency" are indeed exempted from Commission regulation.[15] The exemption does not cover transactions involving the sale of foreign currency for future delivery conducted on a board of trade, since such transactions are specifically excepted from the exemption. Nor does the exemption cover options *involving* foreign currency, which are not "transactions in foreign currency" within the meaning of the Act. Instead such options are "transaction[s] . . . involving any commodity regulated under this chapter[16] . . . which [transactions are] of the character of . . . an 'option', . . ." 7 U.S.C. § 6c(b). *See* 7 U.S.C. § 13(e) ("transaction in commodity futures," "transaction in an actual commodity" and "transaction of the character of . . . an 'option' . . ." distinguished). And, accordingly, such options are within the proscriptions of the Act and Regulation 32.11.[17]

The statutory construction employed here, which finds the Commodity Exchange Act applicable to options involving foreign currency, is supported by an examination of the problem that faced Congress when Congress considered the Act. As the legislative history shows, Congress believed that transactions in foreign currency, *i.e.,* in the actual commodity, were already properly controlled by the bank regulatory agencies.[18] However, the situation with respect to options was different: "Intimations of difficulties in the commodity options market came to the attention of Congress in the

---

**15.** As noted above, even the exemption for "transactions in foreign currency" has an exception: transactions in foreign currency that "involve the sale thereof for future delivery on a board of trade", 7 U.S.C. § 2, are excepted from the exemption and are thus within the scope of the Act and Commission regulations.

**16.** Foreign currency is a "commodity regulated under this chapter," 7 U.S.C. § 6c(c), because foreign currency is an "interest in which contracts for future delivery are presently . . . dealt in," 7 U.S.C. § 2, and as such within the definition of "commodity" in 7 U.S.C. § 2. *See supra* note 11.

**17.** A useful way of stating the distinction relevant to the statutory construction involved here is that the purchase or sale of an option is not a "transaction in foreign currency" but a "transaction in options."

A short way of stating the reason for rejecting defendants' argument is this: the language, "[n]othing in this chapter shall be deemed to govern or in any way be applicable to transactions in foreign currency," 7 U.S.C. § 2, does not eliminate foreign currency from the definition of "commodity"; the language merely exempts certain foreign currency transactions—*not including options*—from regulation under the chapter.

**18.** The legislative history of the Act makes clear that the exemption in 7 U.S.C. § 2 for transactions in foreign currency was intended to apply only to inter-bank transfers of actual currencies:

A great deal of the trading in foreign currency in the United States is carried out through an *informal network of banks and tellers.* The Committee believes that *this market* is more properly supervised by the bank regulatory agencies and that, therefore, regulation under this legislation *is* unnecessary.

S.Rep.No. 93–1131, 93rd Cong. 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 5843, 5863 (emphasis added).

early 1970's; *existing laws had not worked well in preventing abuses in the options industry.* Options were an especially hospital environment for abuse . . . ." *British American Commodity Options Corp. v. Bagley, supra,* 552 F.2d at 485 (emphasis added; footnote omitted). Thus, it was reasonable for Congress to treat differently the problem of transactions *in* foreign currency, *see* 7 U.S.C. § 2, and transactions *involving* foreign currency which are of the character of an option. *See* 7 U.S.C. § 6c(b) and (c).

7 U.S.C. § 6c(d) [19] authorizes the Commission to issue regulations permitting grantors and futures commission merchants to participate in commodity option transactions if certain prerequisites are met. Defendant Board and its organizational affiliates argue that 7 U.S.C. § 6c(d) violates defendants' due process rights. In particular, these defendants contend that 7 U.S.C. § 6c(d)'s requirement that grantors of options have a $5,000,000 net worth is without a rational basis. I reject this contention. Congress could have found that persons with a net worth of $5,000,000 are less likely to "fly by night" than are persons with a lesser net worth. Thus, although the fact that an option's grantor has a $5,000,-000 net worth may not in all cases provide effective insurance for investors in commodity options, the requirement of a $5,000,000 net worth has a rational basis.

I find that the Commission has "made a prima facie showing," *Commodity Futures Trading Commission v. British American Commodity Options Corp.,* 560 F.2d 135, 142 (2d Cir. 1977), *cert. denied,* 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1147 (1978), that defendants have violated the Act and Regulation 32.11. To be entitled to a preliminary injunction, therefore, the Commission need show "only that there is a reasonable likelihood that the wrong will be repeated." *Id.* at 141. *Accord, Commodity Futures Trading Commission v. Hunt,* 591 F.2d 1211, 1220 (7th Cir. 1979). In this respect this case, in which defendants continue to carry

on the disputed activities, is similar to *British American, supra,* in that the likelihood of future violations is clear:

A likelihood of future violations may be inferred from past unlawful conduct. In the present case, not only did British American maintain that its activities were legitimate, but it persisted in offering commodity trading advice right up to the day of the hearing in the district court. Under these circumstances, the likelihood of future violations, if not restrained, is clear.

*Commodity Futures Trading Commission v. British American Commodity Options Corp., supra,* 560 F.2d at 142. Accordingly, the Commission is entitled to a preliminary injunction.

### B. *Violations of Rule 32.7*

Commission Rule 32.7(e) [20] provides as follows:

(e) All records, memoranda and other documents required to be maintained by paragraphs (a) through (c) of this section, and to be prepared by paragraph (d) of this section shall be retained for the period specified in § 1.31 of this chapter, and each person required to maintain such records shall be required to produce the same for inspection and furnish true and correct copies thereof and information and reports as to the contents or meaning thereof when and as requested by any authorized representative of the Commission or the United States Department of Justice.

Pursuant to Rule 32.7(e), the Commission has sought, and is entitled to have, access to defendants' records, memoranda, and other documents. Rule 32.7 was promulgated by the Commission pursuant to the Act, and the Second Circuit has held that the Rule's promulgation was in compliance with the requirements of the Administrative Procedure Act. *British American Commodity Options Corp. v. Bagley, supra,* 552 F.2d at 491–92. Defendants must comply with it. *See Kelley v. Carr, supra,* 442 F.Supp. at 360.

---

**19.** Section 4c(d) of the Act.

**20.** 17 C.F.R. § 32.7(e) 1978.

Defendants have denied the Commission access, and there appears to be a reasonable likelihood that, in the absence of a preliminary injunction, defendants will continue to do so. *See Commodity Futures Trading Commission v. British American Commodity Options Corp., supra,* 560 F.2d at 142.

This memorandum order constitutes my findings of fact and conclusions of law under Rule 52(a), Fed.R.Civ.P.

SO ORDERED.