**COMMODITY FUTURES TRADING COMMISSION, Plaintiff,**

v.

**INCOMCO, INC., Philip M. Smith, Lincolnwood, Inc., and Robert S. Novick, Defendants.**

**No. 80 Civ. 3103 (KTD).**

United States District Court, S.D. New York.

Feb. 29, 1984.

See also, 559 F.Supp. 529.

later review, investigative, expert or other services without prior authorization if necessary for an adequate defense. The total cost of services obtained without prior authorization may not exceed $150 and expenses reasonably incurred.

9. *See, supra*, note 1 for text.

Rule Enforcement Unit, Div. of Enforcement, Commodity Futures Trading Com'n, David A. Reed, Asst. Director, Washington, D.C., for plaintiff; Lloyd E. Friesen, Craig L. Kemmerer, Washington, D.C., of counsel.

Lovell & Westlow, New York City, for defendants Lincolnwood, Inc. and Robert S. Novick; Christopher Lovell, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

Plaintiff, the Commodity Futures Trading Commission ("CFTC") brought this action pursuant to 7 U.S.C. § 13a–1 against Incomco, Inc., Philip Smith, Lincolnwood, Inc. ("Lincolnwood"), and Robert Novick alleging violations of the statutory record-keeping provisions applicable to commodity futures' traders, see 7 U.S.C. §§ 6g & 6i, and the regulations promulgated thereunder, see 17 C.F.R. §§ 1.31 & 1.35. On July 29, 1981 the action was terminated as to defendants Incomco, Inc. and Smith by the entry of an order of permanent injunction and final judgment.

On February 16, 1984, I held a one-day bench trial on plaintiff's complaint against the two remaining defendants. At trial CFTC alleged that Lincolnwood, aided and abetted by Novick, denied CFTC complete access to and inspection of the books and records required to be kept by a commodity futures commission merchant. These records pertained to the trade transactions and positions of Lincolnwood and its customers in various commodity futures contracts. CFTC now seeks a permanent injunction against Lincolnwood and Novick asserting that there is a reasonable likelihood that they will commit future violations of the record inspection regulations.

Before trial, the parties stipulated to the following facts:

1. Lincolnwood is an Illinois corporation which was registered with the Commission as a futures commission merchant, pursuant to Section 4f of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. § 6f (1976), during all times relevant hereto, up to and including December 31, 1981. Lincolnwood is presently registered with the Commission as a futures commission merchant.

2. From at least November 23, 1979, until on or about February 9, 1981, Lincolnwood maintained its principal office at 141 West Jackson Boulevard, Chicago, Illinois, and its New York branch office at One World Trade Center, New York, New York. At the present time, the principal office of Lincolnwood is located at Gateway Plaza, 355 Southend Avenue, Suite 10J, New York, New York.

3. On or about January 26, 1981, the Ira Kuhlik Trading Corporation assumed responsibility for the supervision, control, expenses, and liabilities of all pending and subsequent administrative, exchange, governmental, and private proceedings, lawsuits, and investigations. Since on or about January 26, 1981, Ira Kuhlik effectively purchased control of and became president of Lincolnwood.

4. Robert S. Novick, who resided at 1365 71st Street, Brooklyn, New York, was employed by Lincolnwood in the New York branch office at One World Trade Center, New York, New York, from at least 1977 until in or about July 1980. From at least May 8, 1980, until his employment with Lincolnwood was terminated in July 1980, Novick was a vice-president of Lincolnwood's New York branch office. He is currently employed by a futures commission merchant in New York, New York. Novick has an application pending to become a member of a contract market (i.e., commodity futures exchange), and he is registered with the Commission as a floor broker.

5. On May 8, 1980, at Lincolnwood's office, Commission representatives met with Novick, who was then a vice-president of Lincolnwood and the manager of the firm's back office operations.

6. At 10:45 a.m. on June 2, 1980, this Honorable Court issued an "Order to Show Cause for Preliminary Injunction and Temporary Restraining Order," which, among other things, temporarily restrained Lincolnwood and Novick from "refusing to permit authorized representatives of [the Commission] to inspect, when and as requested, all books and records required by the Act or the Regulations thereunder to be maintained by futures commission merchants."

7. On January 5, 1983, a Commission representative issued a subpoena to Ira Kuhlik, the President of Lincolnwood, and on January 6, 1983, the subpoena was served upon Kuhlik.

8. The subpoena required Kuhlik to appear at the Commission's offices in New York County on February 8, 1983, to testify in an investigation being conducted by the Commission. The subpoena also required Kuhlik to produce various documents described in the attachment annexed to the subpoena, which documents included trading cards required to be kept and readily accessible to Commission representatives.

9. On July 1, 1983, upon the Commission's application, the Honorable John E. Sprizzo, United States District Judge, Southern District of New York, issued an Order to Show Cause ("July 1 Order") directing Kuhlik to show cause why an order should not be entered compelling his compliance with the subpoena. Service of the July 1 Order was made on Kuhlik on July 1, 1983.

10. Lincolnwood is presently engaged in business as a futures commission merchant.

From the evidence presented at trial, I also find the following additional facts. At the May 8, 1980 meeting with Novick at Lincolnwood's New York branch office (*see* Stipulated Fact # 5 *supra*), CFTC requested Lincolnwood's financial ledger, trading blotter, and a sample of order tickets covering a specified period of trading under investigation. Novick, then 28 years old and the junior Lincolnwood employee in New York, had previously been directed by the Chicago home office to turn to Philip Smith when he was in doubt as to the correct course of action to take. Philip Smith, previously a defendant in this case, rented an adjacent office and was personally and commercially familiar with Lincolnwood's business. Therefore, Novick consulted Smith and, following Smith's direction, asked the CFTC representatives to put their document request in writing. The CFTC representatives stated that this was against their "procedures," though they did not state that Novick's refusal was unlawful. Novick remained firm.

Later, Novick determined that CFTC was not required to put the request in writing. Novick thereafter turned over some of the documents, failing to provide all of the order tickets. It was only after the June 2, 1980 order (*see* Stipulated Fact # 6 *supra*) that virtually all such tickets were turned over. Patrick Thompson, one of the CFTC representatives at the May 8th meeting stated, however, that Novick was not contumacious at any point during the May 8th meeting, but rather appeared simply to follow Smith's lead. Novick left Lincoln-

wood's employ shortly thereafter in July 1980, though he still is in the commodity trading industry. *See* Stipulated Fact # 4 *supra.*

The second incident of supposed misconduct occurred during the summer and fall of 1982. Although the incident does not involve inspection access to Lincolnwood's records, CFTC argues that it is relevant to determining the company's propensity to commit violations of the record-keeping and inspection-access regulations.

In mid-1982, the staff of CFTC Supervisory Auditor Alexander Clemente conducted a segregation audit of Lincolnwood which revealed apparent violations of the Commodity Exchange Act. Accordingly, Delacy Cox, Assistant Chief Accountant of the Division of Trading and Markets of CFTC, sent a letter to Lincolnwood dated September 23, 1982, relating the apparent violations. The letter also requested a documented response within fourteen days, including proposed and implemented corrective measures, with reference to the trading period from March 1, 1982 to July 31, 1982. Plaintiff's Exh. 8. On October 15, 1982, Steven Soebel, Vice-President of Lincolnwood sent a letter to CFTC requesting an extension of time in which to respond to the alleged violations. Plaintiff's Exh. 9. Soebel also telephoned CFTC to communicate the request for a time extension. Both by telephone and by letter dated October 20, 1982, Frank Maltese, Branch Chief of the Office of Audit and Financial Review, Division of Trading and Markets of CFTC denied the request, stating that fourteen days was a reasonable period of time. *See* Plaintiff's Exh. 10. On November 10, 1982, Soebel delivered Lincolnwood's response including the corrective measures taken, many of which CFTC admits already had been implemented during the audit. Testimony of Supervisory Auditor Clemente; *see* Plaintiff's Exh. 11.

The third and final asserted incident of misconduct occurred in 1983 after CFTC issued a subpoena to Ira Kuhlik, the present President and owner of Lincolnwood, requiring Kuhlik to produce various documents including Kuhlik's trading cards. The subpoena was issued to Kuhlik in his personal capacity. Kuhlik fully complied with the document request except that he detached the top portion of the trading cards. The top portion, Kuhlik stated, contained personal notations including his personal trading position. Kuhlik detached the top, he explained, because in 1976 he had been nearly bankrupted when he submitted the complete cards and other traders were able to determine his trading position. Kuhlik also noted that he had previously turned over his cards to certain contract market surveillance organizations without the top portion and had received no objection to this practice. Nonetheless, CFTC demanded the complete trading cards. On advice of counsel, however, Kuhlik objected to turning over the trading card's top portion. Therefore, CFTC sought and obtained after a hearing on September 26, 1983, an order from my colleague Judge Vincent L. Broderick directing Kuhlik to turn over the trading cards completely intact. Accordingly, Kuhlik matched and reattached the top portions of his trading cards and turned them over to CFTC.

## DISCUSSION

■ To be entitled to the injunctive relief sought herein, CFTC had to establish "a reasonable likelihood that the wrong [would] be repeated" by Novick and Lincolnwood. *CFTC v. British American Commodity Options Corp.,* 560 F.2d 135, 141 (2d Cir.1977), *cert. denied,* 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1147 (1978). Some factors that courts previously have found relevant include:

> the likelihood of future violations, the degree of scienter involved, the sincerity of defendant's assurances against future violations, the isolated or recurrent nature of the infraction, defendant's recognition of the wrongful nature of his conduct, and the likelihood, because of defendant's professional occupation, that future violations might occur.

*SEC v. Universal Major Industries*, 546 F.2d 1044, 1048 (2d Cir.1976), *cert. denied*, 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977).

With respect to Novick, the evidence is particularly insufficient to warrant injunctive relief. Novick did not intentionally or recklessly violate the statute and regulations during the incident which occurred over three and one half years ago. He admitted that his refusal to grant CFTC access had been error, and that essentially he was merely following the Home Office's directives by listening to Smith. Moreover, the May 8th violation was isolated, a fact highlighted by CFTC's inability to cite any further improprieties by Novick since the initial incident years ago. Today, Novick credibly states that he would grant CFTC access to documents unhesitatingly. Accordingly, CFTC has failed to carry its burden of establishing a reasonable likelihood of future violations by Novick, and the motion for a permanent injunction is denied.

■ Similarly, CFTC has failed to carry its burden of establishing that Lincolnwood is likely to violate sections 6g and 6i in the future. For example, the May 1980 incident occurred three and one half years ago during prior management of Lincolnwood. Moreover, as I pointed out above, the violation was not wilfull.

With respect to the fall 1982 audit, I note first that this does not even involve inspection of documents. More importantly, CFTC admitted that its audit took several weeks to complete; Lincolnwood obviously had to cover the same ground as the audit and examine a vast number of documents. Clemente himself stated that fourteen days might not have been a reasonable period of time. In addition, according to Clemente Lincolnwood implemented several corrective measures brought to its attention by CFTC as the audit took place, thus demonstrating Lincolnwood's good-faith desire to comply with the statutory and regulatory proscriptions.

Finally, the third alleged incident in the Spring of 1983 involved a differing interpretation of the law, and one which, apparently, even the various market surveillance organizations are not in complete agreement on. That Kuhlik sought to avoid a potentially disastrous disclosure of his trading position, on advice of counsel, does not suggest that Lincolnwood is likely to violate sections 6g and 6i again. Furthermore, these few incidents of supposed misconduct must be viewed against the backdrop of Lincolnwood's uncontroverted 9,000 plus compliances during the past three years. In short, the evidence does not support a finding that there is a reasonable likelihood that Lincolnwood will violate 7 U.S.C. §§ 6g and/or 6i in the future.

Accordingly, CFTC's request for an order of a permanent injunction is denied as against both Robert Novick and Lincolnwood. The action is dismissed.

SO ORDERED.