SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff-Appellee,

v.

UNIVERSAL MAJOR INDUSTRIES
CORP. et al., Defendants,

Arthur J. Homans, Defendant-Appellant.

No. 133, Docket 75–6111.

United States Court of Appeals,
Second Circuit.

Argued Oct. 28, 1976.

Decided Dec. 16, 1976.

Bradley R. Brewer, New York City
(Brewer & Soeiro, New York City, of coun-
sel), for defendant-appellant.

David J. Romanski, Asst. Gen. Counsel for S. E. C., Washington, D. C. (David Ferber, Solicitor to the Commission, Howard B. Scherer, Washington, D. C., of counsel), for plaintiff-appellee.

Before LUMBARD and VAN GRAAFEILAND, Circuit Judges, and BONSAL, District Judge.*

**VAN GRAAFEILAND, Circuit Judge:**

The Securities and Exchange Commission commenced this action against appellant and seven other defendants, seeking injunctions for violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. The other defendants consented to the entry of permanent injunctions against them. Following a trial in the Southern District of New York, Judge Tenney found that appellant had aided and abetted his client, Universal Major Industries Corporation (U.M.I.), in selling over three million shares of unregistered stock in violation of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and permanently enjoined him from further violations. We affirm.

U.M.I. became a publicly held corporation in 1954, and appellant was its general counsel from 1959 through 1973. In March 1967, U.M.I. sought to raise capital to expand its petroleum exploration and development operations. To avoid the registration requirements of the Securities Act of 1933 (the Act), U.M.I. decided to engage in a private placement of debentures, exempt from registration under Section 4(2) of the Act, 15 U.S.C. § 77d(2). Appellant advised that no registration would be required for the debentures so long as the number of transferees was small, they were provided with substantial information about U.M.I. operations and they possessed sufficient expertise to evaluate that information.

Instead of complying with appellant's restrictive admonitions, the company issued almost $3,500,000 of its 6% convertible debentures to approximately 425 persons and $440,000 of its 7% convertible debentures to 26 persons. Realizing that U.M.I. had transgressed the boundaries of the Section 4(2) exemption requirements, appellant instructed it to have the debentures registered with the S.E.C. U.M.I. retained attorney Edward Gedalecia to process this registration, but this was never accomplished.

Between March 1967 and February 1973, U.M.I. also issued roughly three million shares of unregistered common stock. These were used for the conversion of the debentures and the payment of interest, in lieu of cash thereon; for the purchase of interests in oil and gas properties; and in exchange for services and cash. In addition, over one-half million shares, issued to controlling shareholders, were sold by them to 134 investors. Before U.M.I.'s stock could be transferred in any of these transactions, its stock transfer agent, Continental Stock Transfer Corporation (Continental), required an opinion letter from U.M.I.'s designated counsel stating that the transfer was legal. The charges against appellant are based on the letters which he, as designated counsel, wrote in compliance with Continental's requirement.

Appellant wrote some 118 letters in connection with U.M.I. transfers of stock to debenture holders who exercised their conversion privilege or consented to receive stock in lieu of cash interest payments, of which the following is a typical example:

> I refer to the attached letter of instructions from the authorized officers of Universal dated May 13th, 1968, with reference to the issuance of common stock of Universal upon a conversion of certain outstanding debentures of Universal.
> With respect to the issuance of shares in accordance with the conversion provisions

---

* Of the Southern District of New York, sitting by designation.

of the debentures, I am enclosing herewith copy of a letter of opinion from (Gedalecia), who (is) special counsel for Universal, bearing date March 11th, 1968. *The undersigned renders no opinion as to the original sale or issuance of the debentures which are presently presented for conversion, but I rely on the opinion of (Gedalecia) to the effect that the conversion of the debentures and the issuance of the stock upon such conversion, in and of itself, does not constitute a violation of the Securities Act.*

However, I call to your attention that it will be necessary to place an appropriate investment stop on your records and to place an appropriate legend upon the face of the certificates of stock to be issued. (Emphasis added).

Each of these letters was accompanied by a letter from attorney Gedalecia to U.M.I. containing, in substance, the following opinion:

In view of the fact that the debentures and the underlying stock into which they are convertible were in our opinion, sold in transactions violative of Section 5 of the Securities Act of 1933, as amended (as well as the Trust Indenture Act) the conversions at this time, as proposed, would not constitute additional violations of the Act.

Despite appellant's obvious attempt to avoid a personal commitment in these letters, the District Court rejected his contention that they were simply letters of transmittal. The District Judge said that, if they were not expressions of opinion, "it is difficult to understand why such letters were written on Homans' stationery (or, indeed, why Homans, an attorney, wrote any such letters), why such letters directed the issuance of restricted and appropriately legended stock, and why such letters contained a statement indicating that Homans *relied upon* the opinion of another." The District Judge found that the letters could reasonably have been understood by their recipients as an expression of appellant's own opinion concerning the legality of the

issuances which they covered, and this finding was not clearly erroneous.

■ Appellant also wrote 88 letters in connection with other stock transfers, which were unaccompanied by a letter from Gedalecia and in which appellant clearly stated his own opinion as to the legality of the transactions. These letters, the District Judge said, speak for themselves. We agree.

Appellant's principal argument in this Court is based upon a footnote in the recent case of *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 191–92 n.7, 96 S.Ct. 1375, 1380, 47 L.Ed.2d 668 (1976), where the Court said:

In view of our holding that an intent to deceive, manipulate, or defraud is required for civil liability under § 10b(5) and Rule 10b–5, we need not consider whether civil liability for aiding and abetting is appropriate under the section and the rule, nor the elements necessary to establish such a cause of action.

■ Appellant construes this statement to mean that the Court feels (a) there should be no liability for aiding and abetting a Section 5 violation, or (b) if such liability may be found to exist, it must be based upon scienter, rather than negligence. We think that appellant reads more than was written.

In order to accomplish the broad remedial purposes of the Securities Acts, *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1971), there are compelling reasons to impose secondary liability in Section 5 actions. By its terms, Section 5 makes it unlawful, "directly or indirectly", to sell unregistered stock. The heart of this prohibition would be cut away if the only person covered by its provisions was the individual who actually consummated the sale. We do not believe the Supreme Court intended that those who play an indispensable role in the sale, as appellant did here, should not be subject to SEC initiated, injunctive restraint.

■ Our prior decisions clearly establish that injunctive relief is proper against aid-

ers and abetters of Section 5 violations. *See SEC v. Management Dynamics, Inc.,* 515 F.2d 801 (2d Cir. 1975); *SEC v. Spectrum, Ltd.,* 489 F.2d 535 (2d Cir. 1973); *SEC v. North American Research & Development Corp.,* 424 F.2d 63 (2d Cir. 1970). *Hochfelder* does not require us to overrule these decisions, and we decline to do so.

In these same decisions, we also made it clear that in SEC proceedings seeking equitable relief, a cause of action may be predicated upon negligence alone, and scienter is not required. While this rule has not met with universal approval, *see, e. g., SEC v. Coffey,* 493 F.2d 1304, 1316 n.30 (6th Cir. 1974), *cert. denied,* 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975); *SEC v. National Student Marketing Corp.,* 402 F.Supp. 641, 648–50 (D.D.C.1975), it is nonetheless the law of this Circuit.[1] *Hochfelder,* which was a private suit for damages, does not undermine our prior holdings. Indeed, our decision need not rest on our rejection of appellant's negligence-scienter argument, because the District Court found that appellant in some circumstances knew and in other circumstances had reason to know that his client was engaging in illegal transactions with the aid of appellant's letters and that appellant's acts were performed with knowledge or reckless disregard to the truth. This, we have held, is sufficient to establish scienter. *Lanza v. Drexel & Co.,* 479 F.2d 1277 (2d Cir. 1973).

Appellant also contends that, before he can be held liable for aiding and abetting, there must be proof, not only that securities were offered for sale, but also that such sales were made as part of a single, definable and integrated offering. He says that, because the sales in the instant case were made as a series of "separate, isolated and individually-negotiated transactions over a period of six years", they did not meet this latter test.

The integrated offering concept sometimes is relied upon where partial exemption from registration is claimed under §§ 3(a)(9) and 3(a)(11), 15 U.S.C. § 77c(a)(9) and § 77c(a)(11).[2] *See* 1 Loss Securities Regulations, 577–78, 591–95 (1961); *Hill York Corp. v. American Int'l Franchises, Inc.,* 448 F.2d 680, 689–90 (5th Cir. 1971). This is done to prevent the fragmentization of what is basically a single issue of stock in order that the benefit of these exemptions might be claimed. *Cf. Shaw v. United States,* 131 F.2d 476, 480 (9th Cir. 1942).

It does not follow, however, that the Commission must establish the existence of an integrated offering where a Section 5 violation is claimed. The focus of inquiry in such cases is not so much upon the nature of the offering as upon the need for protection of the class of offerees; *i. e.,* whether they have the information which a registration would disclose, or have access to it. *Gilligan Will & Co. v. SEC,* 267 F.2d 461, 466 (2d Cir. 1959). The need for this protection remains the same whether sales are concentrated in a short period of time or made as part of a series of isolated transactions. Although the size of the offering, the number and relationship of the offerees, and the manner in which the offering is made are factors which may be considered in determining whether the offering is public or private, *Hill York Corp. v. American Int'l Franchises, Inc., supra,* 448 F.2d at 687–89, these are simply criteria

---

1. Appellant argues with some plausibility that courts should not seek to eliminate negligent behavior by enjoining against it, because, by definition, negligence is inadvertent and unintended. Moreover, if the intent or knowledge required for a finding of contempt is no greater than that required for the initial violation of the statute, *see United States v. Hill,* 298 F.Supp. 1221, 1236 (D.Conn.1969), a defendant may find himself in contempt of court for conduct which is merely inadvertent and unintended. We are sure, however, that these considerations were not overlooked by the prior panels whose holdings we follow. In any event, the District Court's finding that appellant acted "with knowledge or reckless disregard of the truth" removes the props from under appellant's basic argument.

2. Section 3(a)(9) exempts securities exchanged by the issuer with existing security holders involving no payment or commission or similar remuneration, and Section 3(a)(11) exempts securities which are part of an exclusively intrastate offering.

which are helpful in arriving at the ultimate determination of whether the purchasers or offerees require the protection of the Act. *Id.* at 689; *United States v. Custer Channel Wing Corp.,* 376 F.2d 675, 678 (4th Cir.), *cert. denied,* 389 U.S. 850, 88 S.Ct. 38, 19 L.Ed.2d 119, *rehearing denied,* 389 U.S. 998, 88 S.Ct. 458, 19 L.Ed.2d 503 (1967); *Andrews v. Blue,* 489 F.2d 367, 373–74 (10th Cir. 1973).

Finally, appellant argues that the District Court abused its discretion in issuing the permanent injunction because the SEC failed to make the required showing of a reasonable likelihood that the wrong would be repeated. *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1100 (2d Cir. 1972); *SEC v. Culpepper,* 270 F.2d 241, 249 (2d Cir. 1959). In support of his contention, appellant points out that he ceased his association with U.M.I. over three years ago and states that the SEC has not even suspected him of illegal activity since that time.

 A District Judge is vested with a wide discretion when an injunction is sought to prevent future violations of the securities laws, *SEC v. Manor Nursing Centers, Inc., supra,* 458 F.2d at 1100, and "cessation of illegal activity does not *ipso facto* justify the denial of an injunction." *SEC v. Management Dynamics, Inc., supra,* 515 F.2d at 807. The factors which he may consider include the likelihood of future violations, the degree of scienter involved, the sincerity of defendant's assurances against future violations, the isolated or recurrent nature of the infraction, defendant's recognition of the wrongful nature of his conduct, and the likilihood, because of defendant's professional occupation, that future violations might occur. *SEC v. Management Dynamics, Inc., supra,* 515 F.2d at 807; *SEC v. Spectrum, Ltd, supra,* 489 F.2d at 542; *SEC v. Manor Nursing Centers, Inc., supra,* 458 F.2d at 1101–02. On the basis of these criteria, we find ample support for Judge Tenney's conclusion that appellant should be permanently enjoined from doing business while he is in violation of SEC rules.

The judgment is affirmed.