**COMMODITIES FUTURES TRADING COMMISSION, Plaintiff,**

v.

**COMMODITIES FLUCTUATIONS SYS-TEMS, INC., D.E. Jones Commodities, Inc. and Karen T. Genovese, Defendants.**

**No. 83 Civ. 5909 (WK).**

United States District Court, S.D. New York.

April 6, 1984.

Commodity Futures Trading Commission by Patricia A. McGovern, Audrey R. Hirschfeld, New York City, for plaintiff.

Baer, Marks & Upham by Debra R. Linfield, Barry J. Mandel, New York City, for defendants Karen T. Genovese and Commodity Fluctuations Systems.

Louis F. Burke & Associates by Louis F. Burke, Jeffrey Levy, New York City, for defendant D.E. Jones Commodities, Inc.

## MEMORANDUM & ORDER

### WHITMAN KNAPP, District Judge.

The Commodity Futures Trading Commission (the "Commission") has applied for preliminary injunctive relief against D.E. Jones Commodities, Inc. ("Jones") for alleged violations of § 4b(A) of the Commodities Exchange Act, as amended (the "Act"), 7 U.S.C. § 6b(A) and § 166.3 of the Regulations promulgated thereunder ("Regulations") 17 C.F.R. § 166.3. Our decision in this case is based on evidence presented at a hearing which commenced on November 9, 1983 and continued through November 17th and on post-hearing papers submitted by the parties. The Commission asserts two violations for which it seeks relief. First, it claims that Jones violated the anti-fraud provisions of the Act, § 4b(A), 7 U.S.C. § 6b(A), through the acts of Commodity Fluctuations Systems ("CFS") and CFS salespersons who were Associated Persons ("AP's") of Jones. Second, it asserts that Jones failed to supervise CFS and the AP's in violation of its obligation to do so under § 166.3 of the Regulations, 17 C.F.R. § 166.3. We will first address the Commission's assertions that the Act has been violated by Jones and then the propriety of injunctive relief.

## JONES'S ALLEGED FRAUD

■ The Act contains a broad anti-fraud provision. Section 4b provides in pertinent part:

> It shall be unlawful ... (2) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made or to be made, on or subject to the rules of any contract market, for or on behalf of any other person ... (A) to cheat or defraud or attempt to cheat or defraud such other person. 7 U.S.C. § 6b(A).

Following an evidentiary hearing in November, we found that CFS salespersons had violated that section by misrepresenting certain risks attendant to commodities trading.[1] The violations of the salespersons were, of course, imputed to their employer, CFS. After finding that such violations were likely to continue, we issued an injunction against CFS. The question before us now is whether the acts of those salespersons may be imputed to Jones, with whom the salespersons were registered as Associated Persons.

The Commission asserts that the CFS salespersons/Jones AP's were agents of Jones, and that we must impute liability to Jones for their fraudulent acts under § 2(a)(1) of the Act. That Section provides:

> [T]he act, omission or failure of any official, agent or other individual, association

---

1. We found that certain "Recommendation Results" distributed to potential customers were per se fraudulent. In addition we concluded, on the basis of customer testimony, that potential customers were led to believe that the risk of losing their investments was small; in reality, the risk of loss was between 80–95%. Evidence presented suggested, however, that the risk of losing one's investment in commodities trading is approximately 80% across the board for all firms—the risk for CFS customers was no better nor worse.

or partnership, corporation or trust, within the scope of his employment or office shall be deemed the act, omission or failure of such individual, association, partnership, corporation or trust, as well as of such official, agent or other person. 7 U.S.C. § 4.

Although we find that Jones itself committed no fraud, we must impute the fraudulent acts of the CFS salespersons to Jones under the statute just quoted.

The CFS salespersons at issue are those hired by CFS who solicited accounts for a program which CFS developed and marketed called the Extended Futures Account ("EFA"). The salespersons marketed the account largely by telephoning potential customers and then sending them promotional literature. In these telephone solicitations salespersons identified themselves as representatives of CFS.[2] The materials distributed, with the exception of two documents (a Jones application and a Jones risk disclosure statement) are developed and packaged by CFS. CFS reviews the hiring of the AP's, retains control over their activities, arranges for compensation, and retains the right to terminate the relationship at any time.

Although these salespersons are hired and supervised by CFS to market a CFS program, they have a relationship with Jones which makes them agents within the meaning of § 2(a)(1). The salespersons involved in this case were each registered with Jones as an AP[3] and Jones carried the accounts which these AP's solicited. At the end of a successful solicitation a customer completed an application to purchase which was on a Jones letterhead, made his or her check payable to Jones, and sent the purchase money directly to Jones. Jones received the money, sent to CFS that portion of the check designated by CFS as a supervisory fee,[4] cleared the trade, maintained the account, and, for its services, took a fee of $13.00 for trades cleared on the New York Exchange and $15.00 for trades on the Chicago Exchange. From the evidence we must conclude that the CFS salespersons/Jones AP's solicited accounts in part at least for Jones's benefit and were, therefore, agents of Jones. Accordingly, we must impute liability for the agents' misconduct to Jones under § 2(a)(1).

## JONES'S ALLEGED FAILURE TO SUPERVISE

■ Jones, as a Commission registrant, has an obligation to supervise the activities of the persons registered with it as Associated Persons. Section 166.3 of the Regulations requires that:

Each Commission registrant ... must diligently supervise the handling of all commodity interest accounts carried, operated or advised by the registrant and all other activities of its partners, officers, employees and agents (or persons occupying a similar status or performing a similar function) relating to its busi-

2. At the evidentiary hearing, customer witnesses testified that salespersons identified themselves as representatives of CFS. Mr. Dall testified that "[t]he person who called me identified himself as Mr. Sanet ... and he indicated that he was a representative of Commodities Fluctuations Systems..." Trial Transcript (hereinafter "Tr.") 30. Dr. Harvey testified that he came to hear of CFS when he "was called by some representative of [CFS's] company." Tr. 99–100 *See also* Tr. at 154–55, 174.

3. Such registrations were made pursuant to Section 4k of the Act, which provided, at all relevant times through January 11, 1983, that:
(1) It shall be unlawful for any person to be associated with any futures commission merchant or with any agent of a futures commis-

sion merchant as a partner, officer or employee (or any person occupying a similar status or performing similar functions), in any capacity which involves (i) the solicitation or acceptance of customers' orders (other than in a clerical capacity) or (ii) the supervision of any person or persons so engaged, unless such person shall have registered, under this chapter, ... [7 U.S.C. § 6k (1976) ].
Effective January 11, 1983, amendments to the Act deleted the reference to "agent" in Section 4k quoted above.

4. Jones deducted $50.00 from the amount designated as CFS's supervisory fee and placed that money in an escrow account to be used to satisfy customer complaints.

ness as a Commission registrant. 17 C.F.R. § 166.3 (1983)

Although Congress did not define diligent supervision in this context, we must assume that Congress meant to provide some protection to customers by requiring that AP's—who directly solicit the public—be supervised by an entity registered with the Commission.[5] Effective supervision, we think, would have to include some kind of review of promotional materials, customer accounts, and some kind of supervision of AP solicitations.

We find that although Jones acted in good faith in establishing procedures enabling supervision and in retaining contractual rights to supervise CFS salespersons/Jones AP's, it failed in its obligation to carry out those supervisory rights and duties. The contract between CFS and Jones provided that CFS was responsible for maintaining a compliance officer who would supervise the employees and insure compliance with all applicable law, rules and practices of the Commission. Whether Jones could delegate some of its supervisory obligations to CFS is an open question. But it appears that even if it could, Jones took no steps to discover whether CFS actually maintained a compliance officer who supervised anyone. The agreement further required CFS to submit all promotional material and disclosure documents given to customers to Jones for prior approval. There is no evidence to suggest that Jones ever obtained any such submission or reviewed such material prior to distribution.

Jones points to several other steps taken to ensure appropriate supervision. These include statements by Ms. Genovese, president of CFS, that compliance memos and National Futures Association Rules were routinely distributed to brokers, that lectures were given to brokers, and that phone calls were monitored through telephone banks. Whether these steps occurred at all—and as to that we have some

doubt—they cannot be used to prove Jones's fulfillment of its supervisory obligations. Jones is required to do something more than contract away its supervisory role.

## PROPRIETY OF INJUNCTIVE RELIEF

Although we find that Jones failed to diligently supervise the handling of the commodity accounts it carried for CFS and the activity of its AP's, and although we impute liability for the fraudulent acts of the CFS salespersons to Jones, we are not persuaded that an injunction would be appropriate.

To obtain statutory injunctive relief the Commission must establish (1) a *prima facie* showing of violations of the Act and (2) a reasonable likelihood that the violations will continue unless enjoined. *Commodity Futures Trading Commission v. British American Commodities Options Corp.* (2d Cir.1977) 560 F.2d 135, 141, *cert. denied,* 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1147; *Securities & Exchange Commission v. Manor Nursing Centers, Inc.* (2d Cir.1972) 458 F.2d 1082, 1100. Although the first requirement has been satisfied, we find there to be little likelihood that any violations will continue and so we decline to issue an injunction. We are well aware that mere cessation of the illegal activity is an insufficient basis for denying statutory injunctive relief. *Securities & Exchange Commission v. Management Dynamics, Inc.* (2d Cir.1975) 515 F.2d 801, 807. Rather, a court must look at the totality of the circumstances surrounding the particular defendant and the violations committed. *Id., Securities & Exchange Commission v. Universal Major Industries* (2d Cir.1976) 546 F.2d 1044, 1048, *cert. denied* 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95.

In this case, we were impressed by the prompt attention given by Jones to problems of which it was notified relating to EFA accounts. No evidence was offered

---

**5.** We note that Jones employs its own salespersons who solicit directly for Jones. The activities of these salespersons, also registered with Jones as Associated Persons and directly employed by Jones are not here at issue.

which would indicate that Jones did not properly attend to any problems relating to CFS or CFS salespersons/Jones AP's of which it was aware. We also note counsel's representation at oral argument that when Jones became aware that some CFS salespersons/Jones AP's were misinforming customers as to fees, Jones met with CFS and developed a new application form which required the customer to write the fee amount in his or her own handwriting. Although this supervision was belated, we find it to be persuasive evidence, along with the testimony of David Jones, president of the company, of the sincerity of Jones's assurances that it will in the future fulfill its obligation to supervise.

As to the fraud claim, we note that Jones was not an active or knowing participant in CFS's misconduct, and we cannot find that Jones—from the few customer complaints of which it was aware—was on notice of the extent of CFS's misconduct. In addition, we note that Jones took affirmative steps to terminate its relationship with CFS, and that such relationship has been severed. Further, we note that only a small percentage of Jones's gross income is attributable to CFS sales activity. David Jones testified that Jones grosses about one-half million dollars a month.[6] This income is made up of retail (also called the "commission business") and non-retail. In October, 1983, $270,000.00 came from the retail or commission business.[7] Of that $270,000.00, $10,000.00 was generated by the activity of the CFS salespersons/Jones AP's.[8] Thus, slightly less than 4% of Jones's retail business can be attributed to CFS for October, 1983. As to Jones's gross income, CFS revenues represent about 2% of such income for the month ending October 31, 1983.[9] The activity

generating this 2% gross income is the only activity at issue in this lawsuit. There is no evidence that the bulk of Jones's business was conducted in anything but proper fashion.

We find, based on the above evidence, no reasonable likelihood that violations will continue. The question we must therefore examine is whether any controlling authority would compel us to issue an injunction despite our belief that it would be inappropriate. The Commission points to several cases which it claims to have such effect. *United States v. Parke Davis & Company* (1960) 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505; *Commodity Futures Trading Commission v. Incomco, Inc.* (2d Cir.1981) 649 F.2d 128; *Commodities Futures Trading Commission v. British American Commodity Options Corp.* (2d Cir.1977) 560 F.2d 135, *cert. denied* 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1147. These cases, however, are easily distinguishable from the one at bar.

In *Parke Davis,* an injunctive action brought under the federal antitrust laws, the district court dismissed the suit after the government presented its case. In reversing that decision, the Supreme Court ruled, first, that the district court's finding that respondent did not violate the Sherman Act was based on an erroneous interpretation of law. 362 U.S. at 43–45, 80 S.Ct. at 511–512. The Court next considered the trial court's alternative holding, that the company's cessation of illegal activity demonstrated that there was *not* likelihood of repetition. As to that, it found that trial testimony from defendant's president revealed that the compelling reason behind the cessation of the company's illegal activity was the institution of an inves-

---

6. Tr. 679.

7. We recognize that the data reflects a period of time approximately two months after the filing of the instant suit and might reflect a drop off in Jones's income attributable to CFS activity. However, there is no evidence before us which would enlighten us as to whether Jones's income from CFS activity was higher at a different time. We do know that at the end of February 1983 Jones carried approximately 650 EFA

accounts for CFS. Tr. 319. However, even if we were to assume that Jones's income increased proportionately, the percentage of income attributable to CFS activity would still be comparatively small.

8. Tr. 686–87.

9. Tr. 679.

tigation by the Department of Justice. *Id.* at 48, 80 S.Ct. at 514. Since this was apparently the only basis for the trial court's ruling, the Supreme Court reversed the judgment and remanded the case to the trial court but provided defendant with the opportunity "to submit evidence in defense and [refute] the Government's right to injunctive relief established by the present record." *Id.* at 48–49, 80 S.Ct. at 514.

In *British American* the Second Circuit Court of Appeals reversed a denial of preliminary injunctive relief. The district court had found that the defendant, a commodity trading advisor, had violated registration requirements of the Commodity Exchange Act by offering trading advice while unregistered. Maintaining that its activities were legitimate, the defendant had persisted in offering such advice right up to the day of the hearing. The district court denied injunctive relief on the ground that mere "continuation of the proscribed activities is not the necessary repetition of a wrong to warrant an injunction unless there is, in addition, proof of fraud or misconduct.'s 560 F.2d at 142. The Court of Appeals' basic reason for reversal was that the district court had erroneously ruled that proof of "fraud or misconduct" was a necessary predicate to injunctive relief. The Court of Appeals further found that— upon the record before it—the likelihood of future violations could be inferred from the defendant's behavior.

In *Incomco* the Second Circuit vacated a trial court's dismissal of a complaint which sought an injunction. The basis of the decision, however, was that dismissal was premature, no adequate record having been developed and the question of whether there was a reasonable likelihood of future violations not having been resolved. The district court having exercised no discretion in the matter, the case was remanded for an evidentiary hearing.

These are the only cases cited by the Commission in which the denial of injunctive relief was reversed, and they involve entirely different circumstances from the case before us. In *Parke Davis* the district court had relied exclusively on the defendant's cessation of illegal activity—which cessation had been prompted solely by a Department of Justice investigation—to determine that violations were not likely to recur. We have, on the other hand, examined the totality of circumstances in making our decision. In *British American* the basis of the Court's reversal was the district court's error in requiring a finding of fraud or misconduct in addition to a finding of likelihood of repetition. We have limited our decision to an evaluation of whether the improper activity is likely to recur. The *Incomco* case is simply not relevant to the one at bar.

The Commission also cites a case where a district court's order granting an injunction was affirmed. *Securities & Exchange Commission v. Universal Major Industries* (2d Cir.1976) 546 F.2d 1044, *cert. denied* 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95. The defendant in that case was an attorney who had aided and abetted in the sale of unregistered stock in violation of the Securities Act of 1933. The appellant argued that the injunction should be reversed because there was little likelihood of continuing wrong. Appellant's support for this contention was that he had ceased his association with the corporate defendant over three years before the present suit was initiated. The Second Circuit rejected this contention and held that, based upon the record and the equitable criteria to be considered to determine the likelihood of repetition, the injunction had been within the district court's discretion. The case is clearly no authority for the proposition that the district court would have abused its discretion had it come to a contrary conclusion.

In summary, we find that Jones failed to diligently supervise the activity of the CFS salespersons/Jones AP's in violation of its obligation to do so under 17 C.F.R. § 166.3, and that although Jones itself committed no fraud, the fraudulent acts of the CFS salespersons must be imputed to it under § 2(a)(1) of the Act. We also find, based on a careful examination of the totality of

the circumstances, little likelihood that any of the violations will continue. Accordingly, we deny the Commission's request for preliminary injunctive relief against Jones. There being several matters yet to be disposed of, we direct the parties to attend a conference in Courtroom 619 on Monday, April 30, 1984 at 4:30 p.m.

SO ORDERED.