COMMODITY FUTURES TRADING COMMISSION and the Commissioner of the State of California, Plaintiffs,

v.

FRANKWELL BULLION LTD., a Hong Kong Corporation; Frankwell Investment Services, Inc., a California Corporation; Frankwell Investment Services (Texas) Inc., a Texas Corporation; and Frankwell Management Service (New York) Inc., a New York Corporation, Defendants.

No. C–94–2166 DLJ.

United States District Court, N.D. California.

Aug. 14, 1995.

Richard L. Symonds, and Jennifer Larabee, Los Angeles, CA, for Commodity Futures on behalf of the Commission.

Edward Michael Riordan, Department of Corporations, for Commissioner of Corporations of State of California.

G. Edward Simpson, Jones, Bell, Simpson & Abbott, Los Angeles, CA, for temporary receiver Thomas Taylor.

Gary L. Benton, and Paul S. Schmidtberger, Coudert Brothers of San Francisco, CA, for defendants.

## ORDER

JENSEN, District Judge.

The Court heard arguments on defendants' motion to dismiss or for summary judgment, defendants' motion to amend answer, plaintiff's motion for reconsideration, plaintiff's

motion to strike, and the temporary receiver's motion for compensation on October 26, 1994. Parties have subsequently filed supplement memoranda. Appearing for plaintiff Commodity Futures Trading Commission ("CFTC" or "the Commission") were Richard L. Symonds and Jennifer Larabee of the CFTC. Edward Michael Riordan of the Department of Corporations appeared on behalf of plaintiff Commissioner of Corporations of the State of California. G. Edward Simpson appeared as counsel for temporary receiver Thomas Taylor, who was also present; Gary Benton and Paul S. Schmidtberger of Coudert Brothers appeared on behalf of defendants. Having considered the arguments of counsel, the papers submitted, the applicable law, and the record herein, the Court GRANTS defendants' motion for summary judgment on the federal claims; DISMISSES the state claims without prejudice; and DENIES plaintiffs' motion for reconsideration. Because the Court grants summary judgment in favor of defendants, the Court does not address defendants' motion to amend answer or plaintiffs' motion to strike defendants' affirmative defenses. The Court will address the temporary receiver's motion for compensation in a separate order.

## I. BACKGROUND

Litigation in the matter formally commenced June 20, 1994, when plaintiffs filed a motion seeking issuance of a temporary restraining order and appointment of a temporary receiver. The complaint charged a number of violations of federal and state law, contending that from August 22, 1991, defendants violated sections 5 and 6 of the federal Commodity Exchange Act, 7 U.S.C. §§ 1–25 ("the Act") by improperly engaging in commodities trades in the foreign currency and precious metals market. *See* Complaint at ¶ 32.

On June 21, 1994, plaintiffs appeared before the Court *ex parte,* and the sought relief was granted against defendants. The Court also ordered defendants at that time to show cause why a preliminary injunction should not issue. That matter was ultimately heard by the Court July 12, 1994. The Court denied plaintiff's motion for a preliminary injunction.

Following submission of a report on distribution of funds by the temporary receiver in this matter, the Court terminated the temporary receivership created by this Court's Order of June 21, 1994. The Court directed the temporary receiver to file his final account and report, and request for compensation.

Defendants presently move to dismiss the complaint or for summary judgment. They also move to amend their answer to assert the additional affirmative defense of preemption of state law claims. Plaintiffs' move for reconsideration of the Court's denial of their motion for a preliminary injunction, and move to strike certain of defendant's affirmative defenses. The temporary receiver moves for compensation.

### A. *The Court's Denial of Preliminary Injunction*

In denying plaintiff's motion for a preliminary injunction, the Court addressed four primary areas: (1) whether defendants have engaged in the trading of precious metals; (2) whether defendants' contracts are "futures," which are regulated by the Commodities Exchange Act ("the Act"), or "spot trades," which are not; (3) whether, even assuming that the contracts were properly classified as "futures," they are nonetheless excluded from coverage of the act by virtue of the Treasury Amendment to the Act; and (4) whether plaintiffs presented evidence of "irreparable injury."

The Court found that the "record is barren of any evidence that precious metals are or were actually traded by defendants." The Court noted that plaintiff's counsel ultimately conceded at oral argument that defendant have not engaged in such trading. The Court found plaintiffs' contention that it is unnecessary to bring forth evidence of any actual trades involving metals to be unavailing: "Nothing has been put before the court suggesting that the CFTC's jurisdiction is so vast as to encompass unfulfilled representations to engage in metals trading." Thus, the Court found that only those challenges to foreign currency trading, and not to precious metals trading, were properly before the

court for purposes of the preliminary injunction.

The Court then turned to a classification of defendants' contracts as "futures" or "spot trades." The Court found that a number of defining characteristics of futures contracts were absent in defendants' contracts. Mainly, there was no fixed delivery date or fixed price at which the customer had to liquidate the contract, unlike the typical futures contract. Moreover, the contract could be liquidated on the same day the purchase was made or at a later date, by automatically rolling over one's positions on a daily basis and liquidating at a future time. Thus, the Court held that the "apparent distinction between ordinary futures contracts and the contracts at issue renders suspect the allegations of plaintiff's complaint, such that it cannot be found at this time that plaintiffs are ultimately likely to succeed on the merits of their underlying complaint."

Finally, the Court noted a "second obstacle inhibiting plaintiff's efforts to persuade the Court of this actions's merits":

> Even were the Court to find that the contracts at hand were properly classified as "futures," it is possible they would be excluded from coverage of the Act by virtue of the Treasury Amendment to the Act.

"The Court is unpersuaded at this time that plaintiffs' interpretation of the Amendment is appropriate." Thus, the Court denied the motion for a preliminary injunction.

## II. DISCUSSION

### A. *Defendant's Motion to Dismiss or for Summary Judgment*

#### 1. *Parties' Arguments*

Defendants contend that "[b]ased on the law and this Court's findings" in denying plaintiff's motion for a preliminary injunction, "there is no issue whose resolution requires that this case proceed any further." Defendants claim that the Court has made the legal determination from undisputed evidence that the transactions in question are spot transactions, not futures transactions. Defendants note that the Court was presented with extensive briefing and evidence on both sides, and argues that summary judgment is therefore appropriate at this point. Defendants also argue that the transactions are exempted from CFTC jurisdiction as a matter of law by virtue of the Treasury Amendment. Defendants contend that since the federal claims should be dismissed, the state law claims should be dismissed as well.

Plaintiff counters that use of a Rule 12(b)(6) motion is inappropriate, and summary judgment is not warranted since there are genuine issues of material fact remaining and defendants are not entitled to summary judgment as a matter of law. Plaintiffs contend that this Court was incorrect regarding its legal conclusions in its prior order. Further, plaintiffs allege various genuine issues of material fact which remain for trial. Plaintiffs contend that it remains disputed whether there is an automatic daily "rollover" resulting from a "daily closing." Plaintiffs also claim that there is a genuine issue of material fact as to defendants' assertions regarding the price at which the Frankwell contracts are liquidated. Further, plaintiffs claim that there is a genuine issue of material fact as to whether defendants offered contracts in gold and silver.

#### 2. *Legal Standard for Summary Judgment*

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(e).

In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, '*specific facts* showing that there is a genuine issue for trial.'" *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,*

477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied*, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986).

### 3. *Analysis*

Plaintiffs contend that defendants are liable under the Commodities Exchange Act for engaging in futures transactions in foreign currency and precious metals without conducting them on or through a CFTC-designated and regulated exchange.

#### a. *Transactions in Foreign Currency*

The Commodities Exchange Act establishes a comprehensive system for regulating futures contracts. It provides that no person shall enter into, or offer to enter into, a transaction involving the sale of a "commodity for future delivery," unless it is conducted on or through a board of trade designated and regulated by the CFTC as an exchange. *See* 7 U.S.C. §§ 2, 6; *Salomon Forex, Inc. v. Tauber*, 8 F.3d 966 (4th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994).

The Commodities Futures Trading Commission Act of 1974 created the CFTC and gave it extensive power to regulate futures under the Act. *See* Pub.L. No. 93–463 (1974). This authority, however, is circumscribed with respect to foreign currency transactions by the so-called "Treasury Amendment" of 1974. The "Treasury Amendment" to the Act creates a jurisdictional exemption for certain foreign currency transactions:

> Nothing in this Act shall be deemed to govern or in any way be applicable to transactions in foreign currency ... unless such transactions involve the sale thereof for future delivery in a board of trade.

7 U.S.C. § 2i(II).

Plaintiffs argue the term "board of trade" is sufficiently broad that, if given its literal interpretation, any association of persons buying or selling currency would be covered, such that the very purpose of the exemption might be rendered meaningless by the subsequent "unless" clause.[1] Plaintiffs therefore suggest an interpretation of the Treasury Amendment which would exempt from coverage of the Act only those foreign currency trades between banks and other sophisticated and informed financial institutions. Plaintiffs contend this reading reflects an interpretation given by the Commission itself, the legislative history of the Treasury Amendment and other case law.

■ In interpreting any statute, the starting point is the language of the statute itself. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Absent a clearly established intention to the contrary, the language of the statute must be regarded as conclusive. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). When the language of a statute is clear, there is no need to rely on its legislative history. *Ex parte Collett*, 337 U.S. 55, 61, 69 S.Ct. 944, 947, 93 L.Ed. 1207 (1949).

■ The Treasury Amendment provides that transactions in foreign currency are excluded from the Act unless carried out on a board of trade. The plain meaning of this provision is that off-exchange foreign currency futures are exempted from the Act. *Cf. CFTC v. Dunn and Delta Consultants, Inc., et al.*, 58 F.3d 50 (2d Cir.1995) (finding *options* involving foreign currency not within the scope of the Treasury Amendment, but otherwise noting that off-exchange foreign currency transactions are exempted from the Act by virtue of the Amendment). If the CFTC's broad interpretation of "board of trade" were to prevail, i.e., that any organization engaged in selling foreign currency futures was a "board of trade," this would render the Amendment meaningless: Every organization would fall outside the scope of Amendment.

The CFTC attempts to avoid this result by arguing that the Treasury Amendment's reference to "board of trade" applies to banks

---

1. Section 1a(1) of the Act defines "board of trade" as any exchange or association, whether incorporated or unincorporated, of persons who are engaged in the business of buying or selling any commodity or receiving the same on consignment.

and other sophisticated institutional investors, but not to organizations that transact with individual investors. Plaintiffs' interpretation of the Treasury Amendment conflicts with the plain language of the statute, however. The Treasury Amendment makes no distinction based on the identity or character of the participants. "The statute distinguishes only between on-exchange and off-exchange trading." *Salomon Forex*, 8 F.3d at 977.

Because the language of the Amendment conclusively reveals Congress' intent that off-exchange transactions in foreign currency are exempted from the Act, the analysis is complete. *See id.* at 975. Even if the legislative history underlying the Amendment is examined, the same result is reached. As the legislative history does not evidence a clearly established intention to the contrary, the language of the statute must be regarded as conclusive. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

The legislative history is ambiguous. The letter proposing the Treasury Amendment refers to protection of the interbank market in foreign exchange futures as a motivating factor. S.Rep. No. 1131, at 49–51, *reprinted in* 1974 U.S.C.C.A.N. at 5887–88. It notes, however, that this market is comprised of "an informal network of banks *and dealers.*" *Id.* at 5887 (emphasis added), *quoted in Salomon Forex*, 8 F.3d at 977. The Treasury Department's concern was that CFTC regulation would "have an adverse impact on the usefulness and efficiency of foreign exchange markets *for traders and investors.*" *Id.* at 5888 (emphasis added), *quoted in Salomon Forex*, 8 F.3d at 977. As *Salomon Forex* found,

> If the congressional goal underlying adoption of the Treasury Amendment was protection of the interbank market in foreign exchange [transactions], this could have been accomplished easily by statutory language aimed at exempting only transactions in which both buyer and seller were banks. What the statute commands instead is the exemption of all trading off organized exchanges, including the entire informal professional network of which banks are a key part.

8 F.3d at 977.

Although *Salomon Forex*'s holding was limited to individually negotiated transactions between sophisticated, large-scale foreign currency traders, the same reasoning applies to the instant case. If Congress had intended to exempt only banks and other large-scale, sophisticated traders from the Act, it could have crafted such language. Instead, the "statute commands ... the exemption of *all trading off organized exchanges.*" *Id.* (emphasis added). The CFTC concedes that defendants' transactions take place "off organized exchanges." *See* Complaint at 7 ("Count I ...: Offer and Sale of Off–Exchange Commodity Futures Contracts"). Accordingly, such transactions are exempted from the Act. *But see CFTC v. Standard Forex, Inc.*, 1993 U.S. Dist. LEXIS 19909, Comm.Fut.L.Rep. (CCH) P26,063 (E.D.N.Y. Aug. 9, 1993) (finding foreign currency futures sold to unsophisticated, individual investors not exempted from the Act by means of the Treasury Amendment).

The CFTC argues that its interpretation of the Act as excluding only foreign currency transactions among banks and other sophisticated large-scale institutions is entitled to deference. *See CFTC v. Schor*, 478 U.S. 833, 844–45, 106 S.Ct. 3245, 3253–54, 92 L.Ed.2d 675 (1986) (agency's interpretation of its own statutory authority, including its own understanding of its jurisdiction, is entitled to deference). In the instant case, however, the CFTC's interpretation is inconsistent with the language of and congressional intent behind the Amendment. *See Tauber v. Salomon Forex, Inc.*, 795 F.Supp. 768, 775 n. 15 (E.D.Va.1992) (refusing to defer to CFTC's interpretation of Treasury Amendment because it conflicts with the statutory language and legislative history) *aff'd, Salomon Forex*, 8 F.3d 966 (4th Cir.1993).

Moreover, the CFTC's interpretation of the Amendment is at odds with the Treasury Department and the Justice Department's interpretation. In *Salomon Forex, Inc. v. Tauber*, 8 F.3d 966 (4th Cir.1993), the appellate court had before it varying interpretations of the Treasury Amendment from the

Department of Treasury and the Department of Justice, on the one hand, and the CFTC, on the other. As amici, the agencies other than the CFTC forwarded an interpretation of the Treasury Amendment as "without limitation as to the participants involved." The Treasury Department and the Department of Justice agreed with the district court in *Salomon Forex* that all off-exchange futures transactions were exempted by the Treasury Amendment, not just those involving banks. Although it is not the agency charged with enforcing the Commodities Exchange Act, the Treasury Department initiated the Treasury Amendment to the Act and is responsible for matters of currency. Consequently, its interpretation of the Amendment contributes to an understanding of the intent behind the Amendment.

Finally, a distinction between sophisticated large-scale investors and private unsophisticated investors would be arbitrary and nearly impossible to apply. In the instant case, for instance, many of defendants' clients appear to be unsophisticated individuals while others have a level of sophistication. Thus, the Court would be in the position of making case-by-case inquiries as to each Frankwell client to determine whether the client was sufficiently sophisticated as to fall within the CFTC's jurisdiction. This is a highly unworkable standard.

The applicability of the Treasury Amendment is a pure question of law susceptible to determination on summary judgment. The plain language of the Treasury Amendment indicates that Frankwell's foreign currency transactions, regardless of whether they are "futures" or "spot trades," are exempted from CFTC jurisdiction because they are not transactions involving the sale for future delivery "in a board of trade." 7 U.S.C. § 2i(II). Thus, defendants are entitled to summary judgment on these claims.

b. *Transactions in Precious Metals*

The Treasury Amendment applies only to transactions in foreign currency, not to transactions in precious metals. Thus, trading in precious metals futures is within the scope of the CFTC's jurisdiction. In the complaint, plaintiffs allege that defendants have been engaged in the business of trading in gold

and silver. Counsel for the CFTC has conceded, however, that there is no evidence that defendants have engaged in such trading. Thus, to the extent plaintiffs' complaint alleges that defendants actually traded in precious metals, summary judgment is clearly warranted.

■ Offers to engage in precious metals transactions are also within the scope of the CFTC's jurisdiction. The Act provides:

> It shall be unlawful for any person to *offer* to enter into, to enter into, to execute, to confirm the execution of, or to conduct any office or business anywhere in the United States ... *for the purpose of soliciting* ... any transaction in, or in connection with, a contract for the purchase or sale of a commodity for future delivery ... unless—
> ....

7 U.S.C. § 6(a). Plaintiffs, however, have not presented evidence sufficient to create a genuine issue of material fact that defendants have in fact made such offers. Plaintiffs have provided no direct evidence of actual offers—no declarations by participants or recipients of such offers. None of plaintiffs' undercover officers contend that defendants made offers to them to trade in precious metals. Plaintiffs present a line taken from a general statement of Frankwell Bullion Ltd.'s world-wide activities found in the preamble to Frankwell Bullion's Customer's Agreement. That statement reads:

> WHEREAS: (1) The Customer is desirous of opening one or more accounts with FBL as the Customer may decide from time to time for investment and/or trading in Currencies, Foreign Exchange Contracts, Loco London Gold/Silver.

The contract is utilized worldwide, however, and states on its face that it is subject to local laws. Plaintiffs also present general statements in defendants' promotional materials as to metals; again, these materials are utilized worldwide. Moreover, these documents do not provide sufficient information to constitute an offer. Plaintiffs also submit a Frankwell San Francisco memorandum dated April 26, 1994 which lists changes in trading hours for currencies and for precious metals because of the United States holiday

honoring former President Richard Nixon. Finally, plaintiffs submit two documents entitled "Dealing Hours (Houston Time)" and "San Francisco Time" which list trading times for precious metals. These, however, appear to be merely internal memoranda and do not evidence a "purpose of soliciting" offers to trade in metals futures.

This is simply too slim a reed upon which to rest liability under the Act. Defendants' world-wide contract and promotional materials and internal memoranda do not constitute offers to the public in the United States to solicit metals trades.

■ Finally, an injunction pursuant to a statutory violation requires not just a violation but the probability of recurrence. *CFTC v. Commodities Fluctuations Systems, Inc.*, 583 F.Supp. 1382, 1385–87 (S.D.N.Y. 1984); *Commodity Futures Trading Commission v. British American Commodity Options Corp.*, 560 F.2d 135, 142, 144 (2d Cir.1977), *cert. denied*, 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1147 (1978). Plaintiffs have presented no evidence of threatened future violations by defendants.

For these reasons, defendants are entitled to summary judgment.

### 4. *Conclusion*

The Court holds as a matter of law that defendants' transactions in foreign currency are exempted from CFTC jurisdiction by means of the Treasury Amendment. Because defendants are entitled to summary judgment by virtue of the Treasury Amendment, the Court need not resolve the issue whether the transactions are "spot" transactions rather than "futures" as a matter of law. Additionally, plaintiffs have presented no evidence of transactions or offers to trade in precious metals. Accordingly, defendants are entitled to summary judgment on all federal claims.

As no federal claim remains in the action, the Court declines to assert supplemental jurisdiction over the state law claims and dismisses them without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Les Shockley Racing, Inc. v. National Hot Rod Ass'n*, 884 F.2d 504 (9th Cir.1989); *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988).

### B. *Plaintiff's Motion for Reconsideration*

Plaintiffs move the Court to reconsider its previous ruling denying plaintiffs' motion for a preliminary injunction. Plaintiffs seek reconsideration on five grounds: (1) that the Order is based on factual errors; (2) that the Order deviates from precedent in finding that the contracts are not futures contracts; (3) that the Order ignores the history and purposes of the Commodity Exchange Act; (4) that the Order is unprecedented in suggesting that the CFTC lacks jurisdiction (because of the Treasury Amendment) over foreign currency futures contracts offered and sold to the general public; and (5) the Order is incorrect as a matter of law in finding that the Act does not outlaw the *offer* of illegal transactions, and incorrect as a matter of fact in suggesting that defendants did not make such offers.

Defendants counter that plaintiffs' motion raises no new issues of law and brings no newly-discovered evidence before the Court. Defendants maintain that plaintiffs simply disagree with the Court's analysis and its reliance on case law contrary to the CFTC's positions. They argue that plaintiffs are simply repeating the argument they made in their memoranda in support of their motion for a preliminary injunction, including the argument that their interpretation of their jurisdiction is entitled to great deference from the Court.

■ In the Ninth Circuit, a motion for reconsideration is only appropriate where the district court: (1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in controlling law. *School District No. 1J v. AC & S, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1992). Here, plaintiffs present no newly-discovered evidence or intervening change in controlling law. Thus, the inquiry is limited to whether the Court committed clear error or made a manifestly unjust decision.

The Court perceive no error in its reliance on *Bank Brussels Lambert, S.A. v. Interme-*

*tals Corporation,* 779 F.Supp. 741, 748–50 (S.D.N.Y.1991) for the conclusion that Frankwell's contracts are more like "spot trades" than "futures."

Moreover, for the reasons discussed above, the Court holds that the Treasury Amendment bars plaintiffs' foreign currency claims as a matter of law. Accordingly, the Court finds no error in its prior holding that "it is possible they would be excluded from coverage of the Act by virtue of the Treasury Amendment."

Plaintiff also contends that the Court was incorrect as a matter of law in finding that the Act does not outlaw the *offer* of illegal transactions. What the Court said is this:

> Plaintiffs' contention that it is unnecessary to bring forth evidence of any actual trades involving metals, *see* Reply at 11, is unavailing; nothing has been put before the Court suggesting that the CFTC's jurisdiction is so vast as to encompass unfulfilled representations to engage in metals trading.

The Court's statement is admittedly ambiguous; it could be susceptible to a reading that offers of trades involving metals, as opposed to completed trades involving metals, are not within the scope of the Act. Accordingly, the Court will take this opportunity to clarify its previous Order: the Court did not intend to hold that offers to trade in metals futures are outside the scope of the Act. To the contrary, the Act explicitly says that offers to trade in metals are covered by the Act. 7 U.S.C. § 6(a).

This does not affect the Court's prior ruling, however. Plaintiffs have not provided sufficient evidence that defendants in fact made offers to trade in precious metals futures.

Consequently, plaintiffs have not shown a likelihood of success on the merits.

Finally, plaintiffs have presented no evidence of irreparable injury. *See United States v. Nutri–Cology, Inc.,* 982 F.2d 394, 398 (9th Cir.1992) (where government only makes a colorable showing of a statutory violation, irreparable injury must be shown).

For these reasons, plaintiffs' motion for reconsideration is denied.

### C. *Defendant's Motion to Amend Answer*

Defendants seek leave to amend their answer under F.R.C.P. 15(a) to assert the additional affirmative defense of preemption to the state law claims alleged, on the basis that leave to amend should be "liberally granted." Plaintiffs counter that defendants are not entitled to amendment as of right, and that giving leave to amend would be futile, because the defense is without merit.

Because the Court grants summary judgment and no longer retains jurisdiction over the state law claims, the Court does not reach the merits of defendants' motion to amend to assert the affirmative defense of preemption.

### D. *Plaintiff's Motion to Strike Affirmative Defenses*

Plaintiffs move to strike three of the affirmative defenses presented by defendants: (1) laches; (2) unclean hands; and (3) estoppel. Plaintiffs argue that these defenses should be stricken because they have no basis in law and striking them at this stage would have the effect of streamlining the case. Defendants counter that their defenses are well-based in law, and that motions to strike affirmative defenses are regarded with disfavor by the Court.

Because the Court grants summary judgment in favor of defendants without reliance on these affirmative defenses, the Court does not reach the merits of plaintiffs' motion.

### III. CONCLUSION

For the foregoing reasons, the Court hereby

(1) GRANTS defendants' motion for summary judgment on the federal claims;

(2) DISMISSES the state claims without prejudice; and

(3) DENIES plaintiffs' motion for reconsideration.

IT IS SO ORDERED.